163 Wis.2d 90 (1991)
470 N.W.2d 914
IN the INTEREST OF K.D.J., A Person Under the Age of 18: B.L.J., Appellant-Petitioner,
v.
POLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.
No. 89-0816.
Supreme Court of Wisconsin.
Argued January 3, 1991.
Decided June 25, 1991.
*92 For the appellant-petitioner there were briefs and oral argument by Donald T. Lang, assistant state public defender.
For the respondent there was a brief and oral argument by Mark D. Biller, Polk county district attorney.
Guardian ad Litem brief was filed by David L. Grindell and Grindell Law Offices, Frederic, for K.D.J.
Amicus Curiae brief was filed by Anne Marie Abell and Legal Aid Society of Milwaukee, Milwaukee.
DAY, J.
This is a review of a decision of the court of appeals, 153 Wis. 2d 249, 450 N.W.2d 499 (Ct. App. 1989) affirming an order of the circuit court for Polk county terminating the parental rights of B.L.J. (mother) to K.D.J. (child), Honorable James R. Erickson, Judge. The mother petitioned this court for review and the petition was granted. We affirm the decision of the court of appeals.
The issue on review as framed by counsel for the mother is:
AS APPLIED BY THE TRIAL COURT AND COURT OF APPEALS BELOW, IS SEC. 48.424(4), STATS., UNCONSTITUTIONAL AND IN CONFLICT WITH THIS COURT'S DECISION IN IN THE INTEREST OF J.L.W., 102 Wis. 2D 118, 306 N.W.2D 45 (1981), INSOFAR AS THIS PROVISION MANDATES A FINDING OF PARENTAL UNFITNESS ONCE THE STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS HAVE BEEN ESTABLISHED?
We conclude the answer is "no" and that sec. 48.424(4) 1987-88 Stats., is constitutional and comports with due process as applied in this case. We also conclude *93 that J.L.W. requirements as to what constitutes parental unfitness in this case has been codified by the legislature and that what warrants termination of parental rights is left by the statutory scheme to the discretion of the circuit court.
The statute, 48.424(4), 1987-88[1] in question here, reads as follows:
48.424 Fact-finding hearing.... (4) If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit. A finding of unfitness shall not preclude a dismissal of a petition under s. 48.427(2). The court shall then proceed immediately to hear evidence and motions related to the dispositions enumerated in s. 48.427. The court may delay making the disposition and set a date for a dispositional hearing no later than 45 days after the fact-finding hearing if:
(a) All parties to the proceeding agree; or
(b) The court has not yet received a report to the court on the history of the child as provided in s. 48.425 from an agency enumerated in s. 48.069(1) or (2) and the court now directs the agency to prepare this report to be considered before the court makes the disposition on the petition. (Emphasis added.)
It is the underlined portion that saves its constitutionality. Section 48.427(2) Stats., provides:
48.427 Dispositions.... (2) The court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights.
*94 This action for termination of parental rights (TPR) was brought pursuant to sec. 48.415(2), Stats.[2] 1985-86:
48.415 Grounds for involuntary termination of parental rights. At the fact-finding hearing the court may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following: ... (2) CONTINUING NEED OF PROTECTION OR SERVICES. Continuing need of protection or services may be established by a showing of all of the following: (Emphasis added.)
(a) That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).
(b) That the agency responsible for the care of the child and the family has made a diligent effort to provide the services required by the court.
(c) That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders, the parent has substantially neglected, wilfully refused or been unable to remedy the conditions which resulted in the removal of the child from the home and there is a substantial likelihood that the parent will not remedy these conditions in the future.[3]
*95 On October 3, 1988, the order of the Circuit Court for Polk County, James R. Erickson, Judge, was entered terminating the parental rights of B.L.J. to her son, K.D.J. Among other things, the court found her to be unfit as a parent; the child was in good health and adoptable and that adoption was in the child's best interest. It is this order, affirmed by the court of appeals, that is the subject of this review. The order followed a jury trial in which it was established by the jury findings that the child was in "continuing need of protection or services," a prerequisite for termination under sec. 48.415(2), Stats.
The child was born October 21, 1982 and the first CHIPS (child in need of protection or services) petition was filed in May 1983, and was not contested by the mother. On June 7, 1983, a dispositional order was entered placing the child in foster care until the mother completed an inpatient alcohol treatment program. On July 5, 1983, he was returned to the mother by court order after she successfully completed the treatment. The court also ordered the mother to abstain from alcohol or drugs. The child was returned to foster care in October, 1983, after the mother was hospitalized following an automobile accident in which she was cited for operating a motor vehicle while under the influence of alcohol. The child was with her at the time of the accident. The child was continued in foster care following an *96 uncontested hearing held on January 12, 1984. On April 17, 1984, the mother entered a "halfway house" in Shell Lake, Wisconsin. On June 15, 1984, the CHIPS order was extended. A year later, June 17, 1985, because of an apparent "commitment to sobriety" by the mother, the child was returned to her custody pursuant to order. From then until March of 1986, there was no further legal action. In April, 1986, the mother voluntarily agreed to a foster home placement for the child so she could obtain inpatient treatment for her alcohol problem. On June 9, 1986, an order was entered placing the child in foster care for six weeks after which he was to be returned to his mother. She successfully completed the program.
However, on October 22, 1986, an order was entered returning the child to foster care. On March 2, 1987, the court extended the dispositional order as well as his foster placement. The mother failed to comply with the conditions imposed. The child has remained in foster care since that time. On March 1, 1988, the CHIPS dispositional order was again extended for one year.
On November 30, 1987, the Department of Social Services for Polk county petitioned the circuit court for termination of the mother's parental rights pursuant to sec. 48.415(2), Stats. The hearing, before a jury, took place on June 16th and 17th, 1988.
In addition to the facts cited above, at the trial and subsequent dispositional hearing there was testimony that the mother had been repeatedly warned that continued failure to abide by the court's requirements that she abstain from alcohol and drugs, attend counseling and therapy sessions, attend AA (Alcoholics Anonymous) meetings on a regular basis, Al-Anon (alcoholic support group) meetings and cooperate with the Social Services Department, could result in termination of her parental *97 rights. Such warnings were given pursuant to sec. 48.356(1) and (2), Stats. 1987-88.[4]
All of these orders and attempts to aid the mother by the Department were designed to help her to overcome her alcohol problem and to function as a parent for her child. She acknowledged that she was an alcoholic. But the record of her cooperation and compliance with the requirements designed to help her remedy the problems that caused the child to be placed in foster homes was very poor. She said there were periods when she refrained from alcohol, once for as long as three months. But her history of failure to cooperate and repeated lapses was amply supported by the evidence.
The jury was made fully aware at the termination of parental rights hearing, both by the District Attorney representing the Polk County Department of Social Services, and the Public Defender, representing the mother, and by the guardian ad litem, representing the child, that the Department was asking the court to terminate the mother's parental rights. It was made clear in the opening and closing statements by counsel. It was also made clear that whether or not that termination would take place was first of all dependent on how they, the jury, answered the special verdict questions.
*98 At the beginning of the hearing, the court advised the jury:
The Department of Social Services has filed a petition with this court which alleges that [K.D.J.] is in need of continuing protection or services. Your role as jurors will be to determine whether [K.D.J.] is in continuing need of protection or services. At the end of this hearing you will be given a special verdict to answer.
In his opening statement to the jury, the District Attorney, Keith O. Jones, representing the Polk County Department of Social Services said:
Today you are here because the Department of Social Services [sic] Polk County Department of Social Services has taken a very serious step. The Department of Social Services has filed with the court a petition to terminate the parental rights of [B.L.J.] to [K.D.J.] and you as a jury although not dealing with that issue will be dealing with the issue of whether or not [K.D.J.] is a child who is in continuing need of protection or services. It will be the obligation of the petitioners to prove the six elements of that to you.
The district attorney then listed the elements that later were encompassed in the special verdict questions.
Attorney David Grindell, the guardian ad litem for the child, told the jury:
I've been working with [K.D.J.] since he was approximately ... six months old. I've been ... actively involved .... My client is [K.D.J.] ... you will be asked to make that determination, either yes, he is in continuing need of protection or services or no, he is not.
Mr. Michael Tobin, Assistant State Public Defender, counsel for the mother, told the jury:

*99 [W]hat [B.L.J., the mother] is asking for in this case is for a verdict that allows her to continue to have parental rights as to [K.D.J.]. She's not asking in this proceeding that [K.D.J.] be immediately returned to her from the foster home in which he's currently residing just to make that clear.... Their department is the agency that's bringing this petition and they are pushing for the termination of her rights and they want to in a sense free [K.D.J.] if you look at it that way to be adopted out by an appropriate family.
After the jury heard five witnesses for the Department of Social Services and five witnesses for the mother, including her own testimony, in final argument to the jury, the District Attorney told the jury:
It's not an easy thing that you're being asked to do. In light of the fact that you are fully aware of what the consequences may very well be.
Mr. Grindell, the guardian ad litem, said:
This decision could possibly lead to a termination of her parental rights to her son [K.D.J.]. It's also important to [K.D.J.]. A termination of parental rights will most likely result in an adoption to himfor him.
The mother's attorney, Mr. Tobin, again told the jury:
[W]hether [B.L.J.'s] conduct or misconduct during the time periods in question has been so extreme that this petition to terminate any relationship between her and her son [K.D.J.] ought to be granted.
[B]y todays verdict you are not being called upon to decide whether [K.D.J.] should be returned immediately to [B.L.J.]. We're not seeking that in this petition. We're merely seeking that you answer the special *100 verdict questions now to defeat the petition to cut off her rights entirely ....
The Judge instructed the jury, and among other things said:
You should not concern yourself about whether your answers will be favorable to one party or to another party nor with what the final result of this lawsuit may be.... Your role as jurors in this case will be to determine whether [K.D.J.] is in continuing need of protection or services. Before a continuing need of protection or services can be found you must be satisfied that each of the following six events has occurred.
The court has found that in this matter the required notice of grounds for termination of parental rights was given on the following dates when the orders were entered placing or extended placement of [K.D.J.] in foster care. January 12, 1984; March 3, 1987 and March 1, 1988. The required warnings were not given the court finds on the following dates when orders were entered placing or extending placement of [K.D.J.] in foster care, June 7, 1983, June 15, 1984, and June 9, 1986.
In considering the special verdict questions which will be numbered five and six you are therefore instructed to consider only the following periods of time, January 12, 1984 to June 23, 1985 and March 3, 1987 to the present date. Third, that the Polk County Department of Social Services has made a diligent effort to provide the services required by the court. The words diligent efforts mean that the Department has acted reasonably, using ordinary and reasonable diligence such as is customarily exercised by other departments under the same or similar circumstances. It requires an earnest and energetic effort. Fourth, that [K.D.J.] has been outside [B.L.J.'s] *101 home for a cumulative total period of one year or longer pursuant to the orders. Fifth, that [B.L.J.] has substantially neglected, has willfully refused or has been unable to remedy the conditions which resulted in the removal of the child from the parent's home.
The words substantially neglected means that the neglect was of a significant and considerable dimension. Sixth that there is a substantial likelihood that [B.L.J.] will not remedy these conditions in the future. The term substantial likelihood means that there is a real and significant probability rather than an imaginary one that [B.L.J.] will not remedy the conditions in the future.
The existence of the six criteria presents a basis upon which you may but are not required to find a continuing need of protection or services. It is for you to determine from all the evidence in this hearing whether there is a continuing need for protection or services.... In reaching your decision it is your responsibility only to determine whether the statutory grounds for termination of parental rights exist. It is my responsibility to determine whether termination of the parental rights of a parent would be in the best interests of [K.D.J.]. (Emphasis added.)
The judge submitted seven questions to the jury. This was a six person jury and five-sixths were required to answer affirmatively all questions before there could be a finding that K.D.J. was a child in need of protection or services. The court on the basis of the evidence answered the first four. The jury answered questions five, six and seven:
QUESTION 1: Has it been established by clear, satisfactory, and convincing evidence that the child, [K.D.J.] was previously adjudged to be in need of protection or services?

*102 ANSWER: Yes [answered by the court] (Yes or No)
QUESTION 2: Has it been established by clear, satisfactory, and convincing evidence that the child, [K.D.J.] was continued in a placement outside the physical custody of the parent, [B.L.J.], pursuant to court's orders under sec. 48.345, 48.363 or 48.365 of the Wisconsin Statutes?
ANSWER: Yes [answered by the court] (Yes or No)
QUESTION 3: Has it been established by clear, satisfactory, and convincing evidence that the Court's orders referred to in Question 2 above, contained the notice required by sec. 48.356(2) of the Wisconsin Statutes?
ANSWER: Yes [answered by the court] (Yes or No)
QUESTION 4: Has it been established by clear, satisfactory, and convincing evidence that the child, [K.D.J.] has been outside the home of his parent, [B.L.J.], for a cumulative total period of one (1) year or longer pursuant to such Court orders, referred to in Question 2 above?
ANSWER: Yes [answered by the court] (Yes or No)
QUESTION 5: Has it been established by clear, satisfactory, and convincing evidence that the Polk County Department of Social Services has made a diligent effort to provide the services required by the Court?
ANSWER: yes (6) [answered by the jury] (Yes or No)
QUESTION 6: Has it been established by clear, satisfactory and convincing evidence that the parent, [B.L.J.] has substantially neglected, willfully refused, or been unable to remedy the conditions which resulted in the removal of her child, [K.D.J.], from her physical custody?

*103 ANSWER: Yes (6) [answered by the jury] (Yes or No)
QUESTION 7: Has it been established by clear, satisfactory, and convincing evidence that there is a substantial likelihood that in the future the parent, [B.L.J.], will not remedy the conditions which resulted in the removal of the child [K.D.J.], from her physical custody?
ANSWER: Yes (5) No (1) [answered by the jury] (Yes or No)
One juror dissented to question seven but the necessary five answered affirmatively to all of the questions. It is interesting to note that the jury was out from 5:18 p.m. to 5:59 p.m., it took only forty-one minutes to reach its verdict.
The statute, sec. 48.424(4), is the provision challenged here, to wit: "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." The sentence immediately following says: "A finding of unfitness shall not preclude a dismissal of a petition under sec. 48.427(2)." Section 48.427(2) provides: "The court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights."
[1]
This means that even though the jury finds the "facts" that would constitute "grounds" for termination, the court may still dismiss the petition if the court finds either that the evidence does not sustain any one of the jury's individual findings or that even though the findings may be supported by the evidence, the evidence of unfitness is not so egregious as to warrant termination of parental rights. This conclusion follows from the wording of sec. 48.427(2), Stats., that the evidence "does not *104 warrant the termination of parental rights." Thus, it seems clear that in spite of what the evidence may show, whether such evidence warrants termination, is a matter within the discretion of the court. This is so because the word "warrant" implies an overview of the evidence, the findings, and also the implication of what is in the best interest of the child.
The legislature has in effect put a "spin" on the word "unfit" by giving the court the discretion to dismiss a petition if the circuit court "finds that the evidence does not warrant the termination of parental rights."
Thus, even if the court accepts the fact finder's "findings," it is not bound to terminate parental rights. "Warrant" is a very broad word.[5] There are obviously degrees of unfitness and some "unfit" parents may be more or less unfit than others. It is the fact of degrees of unfitness that has caused the legislature to allow the court, in the exercise of discretion, to evaluate a "finding" of "unfitness" even though the grounds of termination may be found by a jury or the court itself.
[2]
The court evaluates not just the fact that "grounds" for termination have been found but the court evaluates the quantity, quality, and persuasiveness of the evidence. The court may conclude the evidence does not warrant termination of parental rights. One cannot imagine a more definitive rejection of a statutory label of unfitness than dismissal of a termination petition. But that is the authority the legislature has given the court in its recognition *105 that technical findings of grounds for termination do not necessarily add up to termination.
[3]
It is also clear that where a jury finds all of the grounds for termination and the court enters its mandatory finding of unfitness pursuant to sec. 48.424, Stats., if the court determines the evidence for any one of the seven findings does not support the jury finding, that would be reason to dismiss the petition because a "finding" of unfitness cannot be sustained if one of the seven required findings is not, in the court's opinion, supported by "clear and convincing evidence."
[4]
The legislature in secs. 48.424(4) and 48.427(2), Stats., by using the word "warrant" (a word similar in meaning to "justify") gave the court broad discretion to dismiss a petition even if grounds for termination are found by the factfinder, in this case, the jury.
While it is obvious from the record that the circuit court concluded that a finding of unfitness had to be entered following his receipt of the jury verdict, it is equally obvious that the court was of the opinion the unfitness conclusion was such as to "warrant" termination.
At the disposition hearing, the court made various observations that demonstrated that the court did in fact conclude that the mother was "unfit." The finding was supported by the mother's unwillingness or inability to sufficiently respond to court orders and social service agency efforts to help her overcome her alcohol problem that left the six-year old in an untenable situation at the time of the termination of parental rights hearing. Of the sixty-eight months of this child's life, forty-two months were spent in foster care because of the mother's alcoholism. Merely because she did not physically abuse the *106 child or neglect him during the intervals when she had physical custody, or visited him while he was in foster care, does not negate her other deficiencies as a parent. Those other deficiencies resulted in the child's frequent placements in foster care.
Even at the time of the hearing, she was not in any program to try and correct her deficiencies as a parent.
The judge at the disposition hearing summed it up quite well. After stating the desirability of home stability in a child's life, the circuit court said, "There is no way of guaranteeing any continuity" in a foster home placement. "That can change from month to month. Certainly from year to year and young [K.D.J.] has been in foster homes a significant portion of his life ... it is simply not fair to [K.D.J.] that he should go through the rest of his young years being bounced from one foster home to another ..." (32:113). The court found termination in the child's best interest and that he was healthy and adoptable. The court said that if the mother "doesn't step forward and do the job in the first 6 years there is just absolutely no reason for the court to believe that she would be willing or able to do so the next six years and the 6 years following that ... but I'm wondering if it's a significant parent/child relationship ... it's more like a pleasant aunt who's available on occasion to visit with a youngster ... [K.D.J.] deserves more than that."
What the court clearly implied was that the mother has not functioned as a parent for most of the prior six years and that he agrees with the jury that "there is a substantial likelihood that in the future ... [she] will not remedy the conditions which resulted in the removal of the child ... from her physical custody." (Question 7, special verdict.)
*107 At the dispositional hearing, the mother was called to the stand by her attorney. She said she was staying with a "boyfriend" and had just started a job for minimum wage that she hoped would go to piece work. She was satisfied with the care K.D.J. was getting at the foster home. She asked the court through questions put to her by her attorney about "sustaining care, foster home" placement, whereby she could make arrangements for visitation but could not apply for custody, and K.D.J. would be there until age eighteen.
The court, with her attorney's acquiescence, questioned her:
MR. TOBIN: I have no objection to the court inquiring if it wishes to.
THE COURT: All right. [B.L.J.] are you able to tell us what the situation is right now in regard to what have been pointed out as drinking problems in the past?
THE WITNESS [MOTHER]: Namely it was the attitude of my drinking was not having a job, that added to stress, a lot of stress has minimized. There are times that I have gone out and I have drank but I know I'm not out all the time or anything like that. I'm mostly either at my job or else I have been staying home.
THE COURT: Has there ever been the counseling, the assessment and treatment, has that ever occurred?
THE WITNESS [MOTHER]: I had gone to assessment. Now they had told me and it was for my drivers license if I wished to get that back that I would have to come to Polk County because I am residing here now and that is for my drivers license.
THE COURT: So, did you get your drivers license?

*108 THE WITNESS [MOTHER]: No.
THE COURT: What do you need to do to get your drivers license?
THE WITNESS [MOTHER]: To have an assessment.
THE COURT: You still haven't done that?
THE WITNESS [MOTHER]: I've gone through it up here but it was the completion of it and then they ended up telling me to go ahead and get reassessed and I need money to have that done and I only started work here so I have to wait a period of time before I get checks coming in.
THE COURT: Have your family members not been in a position to help you or have they been unwilling to help you with some of these problems?
THE WITNESS [MOTHER]: They have a lot of things going on with themselves too, so it's pretty much up to me. They help when they can but it'sanything that has to deal with that would be up to me then.
THE COURT: Okay. If there's nothing else you may be excused.
It was clear that three and one-half months after the termination of parental rights hearing that nothing had changed, she still drank, no attempt had been made to solve the problem that caused the termination hearing, only a hope that someone else would do the "mothering" and she could occasionally visit, as the "pleasant aunt" the court described.
Counsel for the mother says that there is an irreconcilable conflict between the statute, sec. 48.424(4), as it was applied in this case and this court's holding in In the Interest of J.L.W., 102 Wis. 2d 118, 306 N.W.2d 46 (1981). We disagree for several reasons. In J.L.W., this *109 court stated, "we hold that termination of [the mother's] parental rights, without a finding of unfitness, constituted a denial of her fundamental rights, protected by the due process clause of the Fourteenth Amendment to the United States Constitution and article I, sec. 1 of the Wisconsin Constitution." 102 Wis. 2d at 119. This court in J.L.W. did not define unfitness.
Counsel for the mother in this case argued at the termination of parental rights hearing, at the dispositional hearing, and in this court that J.L.W. requires the circuit court to make an independent finding of parental unfitness. We disagree. Such finding was mandated by the statutes when the child was found by the jury to be in continuing need of protection or service and the judge so found. From the comments of the circuit court it is clear that the court was convinced her unfitness was sufficiently egregious to warrant termination. There would be no point in sending this case back to the circuit court for a specific, declaration to that effect. As the court of appeals said in Englewood Apartments Partnership v. Grant & Co., 119 Wis. 2d 34, 39, 349 N.W.2d 716 (Ct. App. 1984):
[A] remand directing the trial court to make an explicit finding where it has already made unmistakable but implicit findings to the same effect would be both superfluous and a waste of judicial resources.
We agree. The circuit court here made "unmistakable but implicit findings" of parental unfitness such as to warrant termination of parental rights.
In the case before us, there was a finding of parental unfitness pursuant to the statute entered by the circuit court. It is true that the judge entered the finding pursuant to statutory direction as a result of the jury findings *110 of all the elements that were required by the statute establishing "continuing need of protection or services."
The legislature has determined that where those facts are established, it shows that a parent is unfit.
There is a sharp contrast between the statute the court dealt with in J.L.W. and the one before us.[6] The statute in J.L.W. provided that only one of the statutory grounds was needed to terminate and did not require a finding of unfitness. "Unfitness" is an absolute requirement before parental rights may be terminated.
In J.L.W., the court, after the jury findings, proceeded to determine "whether termination would promote the best interest of the child." This "puts the cart before the horse." Parental rights may only be terminated if the parent is unfit. Then a disposition looking to the best interest of the child takes place. See Stanley v. Illinois, 405 U.S. 645 (1972) and Quilloin v. Walcott, 434 U.S. 246 (1978).
*111 J.L.W. was a case of a mother of two teenage children bearing a child out of wedlock. Facing financial and personal problems she turned to her family for help. Her sister took the child and they discussed, and at times, agreed that the sister could adopt the baby. When the mother, Mrs. R., decided she did not want to go through with any adoption, her sister and brother-in-law sought to terminate her parental rights. The jury found "grounds" and the circuit court terminated the mother's rights to her child.
This court reversed saying, "[i]n this case, no finding was made that Mrs. R. was an unfit parent, nor could such a finding be sustained on this record." J.L.W., 102 Wis. 2d at 137.
This court said, "[w]hile her actions may have constituted statutory grounds for termination, they do not demonstrate her unfitness as a parent." 102 Wis. 2d at 137.
The evidence as to parental fitness in J.L.W. is in sharp contrast to the record here. In J.L.W., this court set forth the evidence in detail. This court quoted at length the findings of a court appointed psychologist, who among other things, said:
[I]t is felt here that the mother's parenting abilities appear to be of a proven quality ... There seems little doubt that [the mother] is an effective authority figure who would present a good developmental model to [J.L.W.] and is well suited to meet his needs for nurturance, succorance, and dependence. She seems quite motivated to fulfill her son's needs and presents a fully adequate and appropriate plan for doing so.
J.L.W., 102 Wis. 2d at 138.
This court said:

*112 In this case, no finding was made that Mrs. R. was an unfit parent, nor could such a finding be sustained on this record.
Id. at 137.
In contrast, the testimony adduced at the trial in this case before us, and again at the disposition hearing, did show such a failure to come to grips with an alcoholic problem, that the child was left in an untenable situation. There seemed no reasonable chance of a turnaround, leading to a meaningful mother-child relationship in the foreseeable future. Such failure does constitute and demonstrate a lack of fitness as a parent.
Counsel for the mother raises the specter of children being taken from parents on statutory grounds falling short of unfitness if the decision of the court of appeals is left to stand. Counsel argues, at p. 2 of his Reply Brief:
The `unfitness' requirement provides a critical safeguard protecting the parental rights of those individuals who due to illness, injury, or some other serious circumstance affecting their lives, are simply unable to function as traditional custodial parents. Individuals restricted by retardation, cerebral palsy, cancer, blindness, mental illness, alcoholism, AIDS, limited education, poverty, and countless other handicaps, illnesses or injuries, should not be deprived of the right to maintain a relationship with their children merely because they are unable to fulfill all the responsibilities of parenthood. (Emphasis added.)
But other cases of inability to parent must be decided on their own facts.
It is clear from this record that the mother's parental rights were not terminated because she is an alcoholic but because of the effect her particular alcohol problem has on her ability to function as a parent. Her persistent refusal to cooperate in any sustained or meaningful way *113 with attempts made to help her cope with her alcoholic problem, has had a serious effect on her relationship with her child for six years. Whatever may be the merits of the argument that alcoholism is a "disease" (and most present day authorities seem to so classify it) or whether it is lack of moral strength, the facts here seem to show a strong element of volition; a volition that has systematically refused help. It is probably true that there are people whose amount and frequency of consumption of alcohol would medically classify them as alcoholics, but who seem to function on the job and in their professions. Some even manage to function as adequate parents. B.L.J. is not one of them.
Counsel calls our attention to a court of appeals decision, In Re Termination of Parental Rights to A.M.K., 105 Wis. 2d 91, 312 N.W.2d 840 (Ct. App. 1981), "[t]hat a finding of unfitness is a determination that further contact between parent and child will be seriously detrimental to the child." Lemmin v. Lorfeld, 107 Wis. 264, 83 N.W. 259 (1900), that termination "is not merely better for the children, but essential to their safety or to their welfare, in some very serious and important respect." We agree these are the standards to be applied in the exercise of discretion in terminating parental rights.
To condemn this child to go from foster home to foster home, waiting for a parental relationship to come into existence for which the mother seems unwilling to take steps to make possible, is, it seems to us, "seriously detrimental to the child." In the Interest of C.E.W., 124 Wis. 2d 47, 65, 368 N.W.2d 47 (1985), cited by counsel for the mother, this court said:
The child, too, has an interest in a termination proceeding because of her or his right to traditional *114 parental bonds, including the right to financial, physical, and emotional care.
Which of those "rights" are fulfilled in the present relationship to any meaningful degree? The answer unfortunately is practically none.
We recognize, as did the Supreme Court in Lassiter v. Department of Social Services, 452 U.S. 18, 24-32 (1981) and Santosky v. Kramer, 455 U.S. 745, 753 (1982), that "state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause." The Due Process Clause would be offended "`[i]f a State were to attempt to force the breakup of a natural family over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.'" Quillion, 434 U.S. at 255 (quoting Smith v. Organization of Foster Families, 431 U.S. 816, 862-863 (1977).
In the case before us the parent was given warning of the possibility of termination whenever the court had to change custody from the parent to others. Notice of the termination hearing was given, counsel was provided, and witnesses were called on behalf of the mother and the county. The jury heard the evidence and made its findings which were supported by the record. There was further testimony at the dispositional hearing. Finally, the judge through his exercise of discretion, determined that the evidence of unfitness was so egregious that the termination of parental rights was warranted. All through the six year period, the court and the welfare agency tried to help this parent solve her problem. There is no showing of any procedural due process violations in this record.
*115 Even if the jury finds all of the grounds for termination of parental rights, and the judge thereby enters the statutory finding of unfitness, the evidence must still support the jury findings. If not, the judge may dismiss the petition for lack of clear and convincing evidence. If the evidence supports the jury's findings, the judge, pursuant to Lemmin, makes a determination of whether termination of contact between the parent and the child is essential to the child's safety or welfare, in a very serious and important respect. If it does not then the judge may determine, pursuant to the statute, that termination is not warranted and may dismiss the petition. The discretion that the statute vests in the court to dismiss the petition for termination if it finds termination is not warranted under the standards assures full, substantive due process.
[5]
The circuit court on this record could, and obviously did, conclude that termination was "essential to (the child's) welfare in some serious and important respect." If the circuit court had felt that termination was not warranted it could have dismissed the petition under the statute. The existence of this statute was called to the court's attention by counsel before the order of termination was signed.
We conclude that B.L.J. was accorded due process by the statute as applied in this case.
We also conclude there was no abuse of discretion in this matter.
By the Court.The decision of the court of appeals is affirmed.
NOTES
[1] This statute became effective May 3, 1988. The hearing on termination was held June 16 and 17, 1988. The court followed this statute. Both parties assumed in their briefs and arguments that this statute applied.
[2] The court in the questions submitted to the jury followed the criteria in sec. 48.415(2)(c) 1985-86, Stats. The parties do not dispute the jury findings based on the use of these criteria.
[3] Section 48.415(2)(c) of the statute was amended effective May 3, 1988, to read:

Grounds for involuntary termination of parental rights ...
(2) CONTINUING NEED OF PROTECTION OR SERVICES. Continuing need of protection or services may be established by a showing of all of the following: ...
(c) That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders, the parent has substantially neglected, wilfully refused, or been unable to meet the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions in the future.
[4] of court to warn. (1) Whenever the judge orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home including any changes required in the parent's conduct, the nature of the home and the child's conduct.
(2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).
[5] 1. Authorization or certification; sanction, as given by a superior. 2. Justification for an action; grounds. 3. Something that assures, attests to, or guarantees some event or result; proof. The American Heritage Dictionary, 1364 (2nd ed. 1982).
[6] In J.L.W., the statute at issue was sec. 48.40, which provided:

48.40 Grounds for termination of parental rights. The court may, upon petition, terminate all rights of parents to a minor in any of the following cases: ...
(2) If it finds that one or more of the following conditions exist: (Emphasis added.)
(a) That the parents have abandoned the minor; or
(b) That the parents have substantially or continuously or repeatedly refused or neglected or are unable for a prolonged indeterminate period to give the minor the parental care and protection necessary for his health, morals or well-being; or
(c) That, although the parents are financially able, they have substantially and continuously neglected to provide the minor with necessary subsistence, education or other care necessary for his health or well-being or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or ....