IN RE the TERMINATION OF PARENTAL RIGHTS TO SHAWN
S., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

FREDERICK H., Respondent-Appellant,

AMANDA S., Respondent-Co-Appellant. [Case No.
00–3035]

IN RE the TERMINATION OF PARENTAL RIGHTS TO JOSEPH
S., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

FREDERICK H., Respondent-Appellant,

AMANDA S., Respondent-Co-Appellant. [Case No.
00–3036]

Court of Appeals

*Nos. 00–3035, 00–3036. Submitted on briefs February 6,
2001.—Decided May 1, 2001.*

## 2001 WI App 141

(Also reported in 630 N.W.2d 734.)

215

On behalf of the respondent-appellant Frederick H., the cause was submitted on the briefs of *Timothy A. Provis* of Madison.

On behalf of the respondent-co-appellant Amanda S., the cause was submitted on the briefs of *Ronald J. Sonderhouse* of *Kay & Kay Law Firm* of Brookfield.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Phyllis DeCarvalho*, assistant district attorney, Milwaukee.

A nonparty brief was filed by the guardian ad litem, *Cynthia A. Lepkowski* of *Legal Aid Society of Milwaukee, Inc., Guardian ad Litem Division*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Amanda S. and Frederick H. appeal from the trial court's order terminating their parental rights to their children, Joseph S. and Shawn S. The trial court determined that they were unfit based on the grounds found in WIS. STAT. § 48.415(4)—that they had been denied visitation with the children by a court order which remained in effect for more than one year.[1] The trial court later determined that it was in the children's best interests to terminate their parental rights. Amanda S. and Frederick H. argue that the trial court erred in finding § 48.415(4) constitutional. They also submit that the trial court's order should be overturned because they were prevented from presenting a defense. Further, they contend that the trial court failed to exercise its

---

[1] All references to the Wisconsin Statutes are to the (1997–98) version unless otherwise indicated.

discretion during the dispositional phase of the trial. Because we conclude that the trial court committed reversible error in preventing Amanda S. and Frederick H. from presenting evidence regarding the reasons for their continuing denial of visitation and their efforts at complying with the conditions for re-establishing visitation, we reverse.[2]

## I. BACKGROUND.

¶ 2. In August 1999, a petition was filed seeking the termination of Amanda S.'s and Frederick H.'s parental rights to their children, Shawn S. and Joseph S.[3] The petition indicated that Shawn S. was found to be a child in need of protection or services on August 24, 1993, and Joseph S. was found to be a child in need of protection or services on August 23, 1994. Originally, both Shawn S. and Joseph S. were placed in Amanda S.'s home under an order of supervision, but they were

---

[2] Because we decide the appeal on this issue, we will not consider the remaining issues. *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if decision on one point disposes of appeal, appellate court need not decide other issues raised); *see also Miesen v. DOT*, 226 Wis. 2d 298, 309, 594 N.W.2d 821 (Ct. App. 1999) ("[W]e should decide cases on the narrowest possible grounds and should not reach constitutional issues if we can dispose of the appeal on other grounds."). For the purpose of this opinion, we will assume, without deciding, that WIS. STAT. § 48.415(4) is constitutional.

[3] The original petition for the termination of parental rights was filed on or about August 6, 1999, and sought the termination of parental rights as to the minor children Mary S., Shawn S. and Joseph S. The petition was subsequently amended, on or about January 25, 2000, removing Mary S. from the proceedings.

removed from their mother's care in April 1996, and placed in foster homes.

¶ 3. As grounds for the termination of parental rights action, the petition alleged a continuing denial of visitation pursuant to WIS. STAT. § 48.415(4).[4] The petition alleged that on April 8, 1998, the earlier child in need of protection or services (CHIPS) dispositional orders were extended and a provision was added suspending Amanda S.'s and Frederick H.'s visitation rights to Shawn S. and Joseph S. The provision required that:

> Such visitation shall not resume for either parent until the following requirements have been met:
>
> (1) The parent presents to the Bureau [of Milwaukee Child Welfare] worker assigned to the case a written statement from the parent's Bureau-approved therapist indicating that in the therapist's opinion the parent is capable of handling the visitation; and

---

[4] WISCONSIN STAT. § 48.415(4) provides:

CONTINUING DENIAL OF PERIODS OF PHYSICAL PLACEMENT OR VISITATION. Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

(a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order . . . containing the notice required by s. 48.356 (2) or 938.356 (2).

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its orders so as to permit periods of physical placement or visitation.

(2) The parent is in compliance with all of the other conditions of this court order[5] ; and

(3) The guardian ad litem approves the visitation arrangements proposed with respect to the matter and setting of the visits; and

(4) When visits do occur, each visit shall be between one child and one parent, until modified by the worker with the agreement of the guardian ad litem.

The petition further alleged that the order suspending visitation was again extended on October 23, 1998, and that the extension suspending visitation was in effect when the petition seeking termination of their parental rights was commenced. The October order slightly amended the conditions for re-establishing visitation:

Such visitation shall not resume for either parent until the following requirements have been met:

(1) The parent presents to the Bureau [of Milwaukee Child Welfare] worker assigned to the case a written statement from the parent's Bureau-approved therapist indicating that in the therapist's opinion, the parent is capable of handling the visitation;

(2) The parent meets with the child's individual therapist and the therapist presents a report indicating that, in the therapist's opinion, the parent understands the child's emotional needs and is

---

[5] The "other conditions" in the court order did not apply to re-establishing visitation and are not at issue here.

willing and able to meet them, within the context of proposed visitation;

(3) . . . The visitation arrangements proposed (as to the timing, manner and setting of the visits) shall be approved by . . . the guardian ad litem, as to Shaw or Joseph.

(4) When visits do occur, each visit shall be between on child and one parent, until modified by the worker with the agreement of. . .the guardian ad litem, as to Shawn or Joseph.

The petition also alleged that Amanda S. and Frederick H. both received written notice of the extensions, as well as written notice of the termination of parental rights as required under WIS. STAT. § 48.356(2). Finally, the petition alleged that the circuit court had not modified its orders denying visitation rights to Amanda S. or Frederick H. with Shawn. S. or Joseph S., and that the termination of their parental rights was in the children's best interest.

¶ 4. After commencing the termination of parental rights action, the State then filed a motion for summary judgment, which the trial court denied. However, at the summary judgment hearing, the district attorney requested clarification of the issues to be litigated at trial. The district attorney argued that the only issue to be decided at trial was "whether there is an order and whether visitation was suspended under that order and . . . that [the order] remained in affect [sic] for a year." The prosecutor indicated that the only evidence that need be presented at trial would be a certified copy of the CHIPS order, accompanied by testimony that the order remained in effect. She urged the trial court to rule that it would be inappropriate to

litigate the preconditions to visitation. The trial court agreed, determining that in phase one of the trial, the only relevant evidence permitted would be documentation that established that an order suspending visitation had remained in effect for one year or more and that the parents failed to re-establish visitation during that period.

¶ 5. Although objecting to the trial court's ruling, due to the court's curtailing of the evidence that could be submitted, Amanda S. and Frederick H. elected to waive their right to a jury and the fact-finding hearing proceeded to be heard by the court. The only issue addressed at the fact-finding hearing was whether the orders denying visitation had been issued and remained unmodified for at least one year, thus providing grounds for finding Amanda S. and Frederick H. to be unfit under WIS. STAT. § 48.415(4). The State called one witness, the children's caseworker from the Bureau of Milwaukee Child Welfare (BMCW). Referencing the certified documents, the caseworker's testimony established, *inter alia,* the existence of the orders for extension and revision of the dispositional order suspending visitation; that the revised dispositional order contained conditions which were required to be fulfilled before visitation by either parent could resume; and that "[a]t least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit [the parents] periods of physical placement or visitation."

¶ 6. On cross-examination, counsel for Amanda S. asked the caseworker whether she was "prepared . . . to testify as to whether or not the [BMCW] did in fact fulfill their requirements" for re-establishing visitation. The State objected to the question as being

irrelevant, and the trial court sustained the objection. Counsel objected to the trial court's ruling, asserting: "I understand the Court's ruling is the same ruling that the Court made as a preliminary matter in February, that it would not hear testimony about whether the [BMCW] complied." The trial court replied, "There were lengthy contested hearings on the extension in both those years, and the parents were represented by Counsel, and I believe that any challenge to those proceedings should have been made by taking a direct appeal at that time." Following the caseworker's testimony, the State rested and, based on the trial court's pretrial ruling, neither Amanda S. nor Frederick H. called any witnesses. Based upon the caseworker's testimony and the certified documents, the trial court found that both Amanda S. and Frederick H. had been denied visitation under an order pursuant to WIS. STAT. § 48.356, that at least one year had passed since the order denying visitation had been issued, and that the order remained unmodified regarding visitation. Therefore, the trial court concluded that grounds for terminating the parental rights of Amanda S. and Frederick H. existed, and under WIS. STAT. § 48.424, found them to be unfit parents.

¶ 7. At the dispositional phase, the children's individual therapists testified that it would be in the children's best interests for Amanda S.'s and Frederick H.'s parental rights to be terminated. The caseworker again testified, stating that the children wished to be adopted. The trial court precluded any evidence from Amanda S. and Frederick H. regarding their efforts to re-establish visitation and refused to entertain any testimony as to why they were unable to meet the conditions which would have allowed visitation. Following the presentation of the evidence, the trial court

found that it was in the best interests of Shawn S. and Joseph S. to terminate the parental rights of Amanda S. and Frederick H., and ordered their parental rights to their children terminated. Amanda S. and Frederick H. appeal.

## II. Analysis.

¶ 8. Because we find this issue dispositive, we first address Amanda S.'s and Frederick H.'s argument that the trial court erred in denying them the opportunity to present evidence. Specifically, Amanda S. and Frederick H. assert that the trial court's ruling erroneously precluded them from presenting any testimony regarding their efforts to fulfill the conditions set forth in the order to re-establish visitation with the children. Therefore, they conclude that they were "effectively precluded from meaningfully participating in the fact-finding hearing," in violation of their due process rights.

¶ 9. The State counters that the trial court properly precluded the attempts by Amanda S. and Frederick H. "to relitigate in the TPR proceedings the issues surrounding the original suspension of visitation." The State asserts that, "[t]he proper vehicle for challenging the trial court's rulings regarding the suspension of visitation was through an appeal from the CHIPS order granting the suspension of visitation." Therefore, the State concludes that the trial court properly determined that these issues could not be relitigated in the TPR case.[6]

---

[6] The Guardian ad litem aligns herself with the State in arguing that, "[t]his appeal is an improper legal forum for litigating issues which solely relate to [the] CHIPS extension proceedings." The Guardian ad litem further asserts that, while Amanda S. and Frederick H. were free to argue that the proof

¶ 10. The State and the trial court have miscon-strued the evidence Amanda S. and Frederick H. sought to introduce. While at first blush, Amanda S. and Frederick H. appear to have argued that they should have been allowed to challenge the original CHIPS dispositional orders suspending visitation and imposing the conditions to re-establish visitation, they actually sought to introduce evidence explaining the reasons they were unable to meet the conditions for re-establishing visitation.[7] As Amanda S. asserts in her brief, she and Frederick H. attempted to elicit testi-

was insufficient to support a finding that visitation had been denied by court order and that at least one year had elapsed since the order was issued without modification of the order, "[e]vidence unrelated to [these] elements of proof was irrele-vant," and, therefore, inadmissible. She maintains that the trial court properly precluded the testimony Amanda S. and Freder-ick H. sought to elicit, because the testimony was unrelated to the elements of proof.

[7] However, we point out that under slightly different cir-cumstances in *S.D.S. and K.A.S. v. Rock County Department of Social Services*, 152 Wis. 2d 345, 448 N.W.2d 282 (Ct. App. 1989), this court concluded that, "[t]he trial court . . . erred when it directed that the findings supporting the CHIPS dispositional orders must be accepted as true and cannot be contradicted at the fact-finding hearing in the termination proceeding." *Id.* at 355. We concluded that, "the department has a significantly heavier burden of proof at the factfinding hearing in the termi-nation proceedings than it had at the CHIPS dispositional proceedings." *Id.* at 357. Therefore, we reversed a pretrial order in so far as it "require[d] the jury to consider as true the findings of fact in the dispositional orders . . . and prevents the parents from introducing evidence in the termination fact-finding hear-ing contesting the earlier findings, including the finding that the department had made a diligent effort to provide court-ordered services." *Id.* at 357–58.

mony "showing what steps and actions that they undertook in order to regain visitation rights." It is apparent from the record that their trial strategy was not simply to challenge the initial order or the conditions placed on them, but rather to place evidence before the court showing their attempts at meeting the conditions for visitation and the reasons why their attempts were unsuccessful. Thus, we determine that the trial court erred in precluding Amanda S. and Frederick H. from presenting evidence of mitigating circumstances surrounding their inability to re-establish visitation.

¶ 11. A trial court's ruling admitting evidence is discretionary, and we will uphold the ruling if we can find a reasonable basis for it. *State v. Plymesser*, 172 Wis. 2d 583, 591, 493 N.W.2d 367 (1992). We can find no reasonable basis to uphold the trial court's ruling that the testimony Amanda S. and Frederick H. sought to elicit from the caseworker regarding their efforts to re-establish visitation was irrelevant. We conclude that the testimony was relevant and, therefore, should have been admitted.

¶ 12. "All relevant evidence is admissible . . . ." WIS. STAT. § 904.02. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. " 'The criterion of relevancy is whether the evidence sought to be introduced would shed any light on the subject of inquiry.' " *State v. Lindh*, 161 Wis. 2d 324, 348, 468 N.W.2d 168 (1991) (quoting *Rogers v. State*, 93 Wis. 2d

682, 688, 287 N.W.2d 774 (1980).[8] Clearly, the testimony Amanda S. and Frederick H. sought to elicit from the BMCW caseworker regarding the efforts they made to comply with the conditions for re-establishing visitation would have "shed some light" on the issue of Amanda S.'s and Frederick H.'s alleged unfitness. Although neither party has indicated what the substance of the caseworker's testimony would have been, it is obvious that her testimony would have made it either more probable or less probable that grounds for termination of parental rights existed. Therefore, her testimony was relevant, and the trial court erroneously exercised its discretion in precluding it. *See Plymesser*, 172 Wis. 2d at 591.

■

¶ 13. Moreover, this court has expressly recognized a parent's right to meaningfully participate in a termination of parental rights proceeding. *D.G. and R.G. v. F.C.*, 152 Wis. 2d 159, 167, 448 N.W.2d 239 (Ct. App. 1989). We conclude that here, the right to meaningfully participate in the termination proceedings included the right to present evidence at the fact-finding hearing regarding the efforts made to comply with the conditions for re-establishing visitation. *Cf. Olmsted v. Circuit Court for Dane County*, 2000 WI App 261, ¶ 11, 240 Wis. 2d 197, 622 N.W.2d 29 ("We conclude that the order infringes on Olmsted's due process

---

[8] In *Rogers v. State*, 93 Wis. 2d 682, 287 N.W.2d 774 (1980), the supreme court also asserted that:

> The proper standard for the test of relevancy on cross-examination is not whether the answer sought will elucidate any of the main issues in the case but whether it will be useful to the trier of fact in appraising the credibility of the witness and evaluating the probative value of the direct testimony.

*Id.* at 689.

right of access to the courts, and thus constitutes an erroneous exercise of discretion.").

¶ 14. In arriving at this conclusion, we look to *B.L.J. v. Polk County Department of Social Services*, 163 Wis. 2d 90, 470 N.W.2d 914 (1991), for guidance. In that case, our supreme court considered the constitutionality of WIS. STAT. § 48.424(4), which provides, in pertinent part: "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parents unfit. A finding of unfitness shall not preclude a dismissal of a petition under [WIS. STAT. § 48.427(2)]."[9] In finding the statute constitutional, the supreme court analyzed the statutory language of both § 48.424(4) and § 48.427(2), and held:

> Thus, even if the court accepts the fact finder's "findings," it is not bound to terminate parental rights. "Warrant" [as used in § 48.427(2)] is a very broad word. There are obviously degrees of unfitness and some "unfit" parents may be more or less unfit than others. It is the fact of degrees of unfitness that has caused the legislature to allow the [trial] court, in the exercise of discretion, to evaluate a "finding" of "unfitness" even though the grounds of termination may be found by a jury or the court itself.

*B.L.J.*, 163 Wis. 2d at 104. The supreme court further asserted that:

> The [trial] court evaluates not just the fact that "grounds" for termination have been found but the court evaluates the quantity, quality, and persuasiveness of the evidence. The court may conclude

---

[9] WISCONSIN STAT. § 48.427(2) (provides; "the court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights."

the evidence does not warrant termination of parental rights. One cannot imagine a more definitive rejection of a statutory label of unfitness than dismissal of a termination petition. But that is the authority the legislature has given the court in its recognition that technical findings of grounds for termination do not necessarily add up to termination.

*Id.* at 104–105. Thus, the legislature has granted the trial court broad discretionary power to dismiss a TPR petition "even if grounds for termination are found by the factfinder." *Id.* at 105. Here, the trial court's ruling effectively foreclosed Amanda S. and Frederick H. from stating their reasons for failing to meet the conditions to re-establish visitation at both the fact finding hearing and the dispositional hearing.

¶ 15. In order to properly exercise its broad discretionary power, we conclude that the trial court was obligated to consider evidence Amanda S. and Frederick H. could have provided regarding any mitigating circumstances surrounding their efforts to satisfy the conditions for re-establishing visitation. "An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Gudenschwager,* 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995). This means that the trial court in the instant case was required to make more than an antiseptic finding that the State had established grounds for termination. Here, "[examining] the relevant facts" and "[applying] the proper standard of law," *see id.*, means that the trial court was required to "evaluate[ ] the quantity, quality, and per-

suasiveness of the evidence," *see B.L.J.*, 163 Wis. 2d at 104–05; which means all the evidence, including the testimony Amanda S. and Frederick H. sought to elicit from the caseworker.

¶ 16. Again, we conclude *B.L.J.* supports our view. There, the trial court arrived at its finding of unfitness based, in part, on "the mother's unwillingness or inability to sufficiently respond to court orders and social service agency efforts to help her overcome her alcohol problem." *Id.* at 105. In that case, the factfinder heard from five witnesses for the Department of Social Services and five witnesses for the mother, including her own testimony. *Id.* at 99. The court noted that the mother acknowledged her alcoholism, but asserted that there were times when she stopped drinking for extended periods. *Id.* at 97. The supreme court determined that the trial court's findings of fact were "amply supported by the evidence." *Id.* There, the mother was allowed to present evidence of her efforts to comply with the court orders, whereas here, the parents were precluded from presenting similar evidence. We are satisfied that this preclusion constitutes error.

¶ 17. Finally, "[t]he Wisconsin Supreme Court has stated that the state's power to terminate the parental relationship is 'an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised.'" *D.G. and R.G.*, 152 Wis. 2d at 167 (citation omitted). Further,

> "It is apparent that the Wisconsin legislature has recognized the importance of parental rights by setting up a panoply of substantive rights and procedures to assure that the parental rights will not

be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver."

*Id.* (citation omitted). "A parent's interest in the companionship, care, custody, and management of his or her child is cognizable and substantial, and the integrity of the family is subject to constitutional protections through the due process clause of the state and federal constitutions." *Id.* This protection includes the parents' right to meaningfully participate in the termination proceedings. *Id.* Given the discretionary power granted to the trial court by the legislature to dismiss a termination petition even though the grounds for termination exist, the trial court is required to consider the "quantity, quality, and persuasiveness of the evidence." *B.L.J.*, 163 Wis. 2d at 104–05. Here, we conclude that the right to meaningfully participate in the termination proceedings placed a concurrent obligation on the trial court to allow Amanda S. and Frederick H. to present evidence of their efforts, and the department's efforts, to comply with the order suspending visitation and the conditions for re-establishing visitation. Therefore, we reverse.

¶ 18. We remand this matter for a new trial, at which time both Amanda S. and Frederick H. may present evidence of the circumstances which prevented them from meeting the conditions for re-establishing visitation and other relevant evidence.

*By the Court.*—Orders reversed and cause remanded with directions.