STATE, Respondent, vs. LaPEAN, Appellant.

*May 18—June 15, 1945.*

304

F. V. McManamy, attorney, and F. E. Yates of counsel, both of Eau Claire, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

BARLOW, J.   On appeal defendant claims that it was error for the court to deny his plea of double jeopardy and to receive in evidence the written confession of defendant made September 10, 1943.   It is also claimed that the verdict was contrary to the credible evidence of the alibi defense offered by the defendant, and that remarks made by special counsel in his argument to the jury were prejudicial.

On March 27, 1944, the first day of the trial, defendant entered a written plea of former jeopardy, setting forth that theretofore, on the 20th day of September, 1943, in the circuit court for Eau Claire county, defendant pleaded guilty to the crime of murder in the third degree for the murder of Ray Robeson on March 20, 1938, on a valid information filed against him by the district attorney of Eau Claire county, and that by the entry of this plea he was placed in jeopardy.   The plea further alleges that the offense charged in the present information is the same act to which defendant pleaded guilty in September, 1943.   No proof was offered in support of the plea except what purports to be a copy of the minutes of the circuit court for Eau Claire county under date of September 20, 1943, in the case of "State of Wisconsin, plaintiff, v. John B. LaPean, defendant."   The minutes of the court on

the alleged former plea were not authenticated as a true copy by the clerk of court, and the record does not disclose that they were ever received in evidence. A circuit court cannot take judicial notice of its own records in another case. *State ex rel. Mengel v. Steber* (1914), 158 Wis. 309, 149 N. W. 32, and authorities cited.

It was incumbent upon the defendant to offer proof in support of the plea and the burden of proof is on him. 2 Bishop, New Crim. Proc. (2d ed. 1913) sec. 1048. The record fails to disclose that the plea was accepted and that the case was disposed of under the plea. The right of the court to refuse to accept a plea is an inherent power of all criminal courts. 2 Bishop, New Crim. Proc. (2d ed. 1913) sec. 795; *La Fave v. State* (1940), 233 Wis. 432, 440, 441, 289 N. W. 670.

Assuming that the defendant was arraigned and entered a plea to the information, it is incumbent upon him to offer proof of the fact that the plea was accepted. If the plea had been accepted the case would have been disposed of. The defendant has wholly failed to make proof of former jeopardy, and the court correctly so held.

A confession of the defendant was received in evidence over objection that the same was obtained by threats and promises, and was therefore inadmissible. Before admitting the confession in evidence the court dismissed the jury and permitted witnesses to be sworn by the state and defendant to determine its admissibility.

Witnesses for the state testified that an officer from the Eau Claire police department visited the defendant once while he was in jail in Detroit and under arrest by federal bureau of investigation operatives, and talked with him a short time about the Ray Robeson murder; that this talk was in the presence of the federal officers and defendant said he would not talk until he was returned to Eau Claire, so the officer left. This was in August, 1943. The next time the officer saw defendant was at the Eau Claire county jail

on September 9, 1943, at which time defendant stated that he had been going straight for a considerable period of time and that it was his intention to continue to do so; that he was very interested in his son by Alice Hanson and also interested in her; that if he had to serve a first-degree murder charge he would have to serve a long time and would be an old man before he got out. He said he got mixed up in this trouble in Eau Claire through Peter Bachmeyer; that he had known Peter for a long time, and Peter had kept after him as he was hard up and needed money, and he finally consented to go in with Peter on this job, which is the Robeson stickup; that on the night of the robbery Peter was supposed to do the actual stickup, but at the last minute, when Robeson came out of the garage, Bachmeyer turned yellow and refused to go through with it, so he, the defendant, jumped out of the car, went over and did the job himself. He said he did not intend to take any of the money if any was obtained, but this was all done because Peter kept after him all the time, and Peter needed money badly to pay a doctor or something to that effect.

The officer testified that this was a voluntary statement on the part of the defendant; that prior to the time defendant made this statement the witness had not threatened him or made any promises or inducements of any kind. After telling his story, defendant wanted the charge reduced from first-degree murder to third-degree murder, and said that he would give a written statement of the facts in the case if this was done. The officer said he had no authority to make any promise but that he would take it up with the district attorney; that he went to the district attorney and discussed the matter with him. It was agreeable to the district attorney to reduce the charge to third-degree murder, and a complaint and warrant were issued. The officer, together with the district attorney, went to the jail and informed the defendant they had a warrant for third-degree murder, which was read to him,

and defendant asked for paper and a pen and said he would give them a statement. Paper and pen were furnished, and on the following day defendant gave the officer the confession in question, which was in his own handwriting, consisting of twelve pages.

Defendant testified that while he was in jail in Detroit, for a period of three days federal officers talked with him about the Robeson murder, and that when the Eau Claire police officer came he threatened to arrest Alice Hanson for aiding and abetting a fugitive from justice unless defendant would talk, and told him that Alice Hanson had made a statement. Defendant asked to see the statement, which he claims was shown to him, and the statement from Alice Hanson was to the effect that three days after the murder defendant told her that he shot Ray Robeson, "to get it off his chest." He thereafter was advised several times to "cop out," the meaning of which was to confess; that the Eau Claire officer advised him to say he had killed Robeson, and defendant refused to talk to him about the case, finally saying that he had not killed the man. Defendant testified that the officer came back the next day and brought him a letter from Alice Hanson and also a carton of cigarettes. Defendant testified that about a year prior to the time of his arrest Alice Hanson had been arrested and taken to the Pontiac county jail and questioned about the Robeson murder; that the day following her arrest defendant went to New York City and remained there for about two months and a half, and then returned to Detroit. Defendant said he was questioned by the federal officers about violation of the selective-service laws and violation of interstate-commerce laws, and bank robbery.

With reference to the conversation with the officer in the Eau Claire county jail, defendant testified that when the officer came in defendant was contemplating making a deal if he possibly could for the reason that he had other charges

against him which he knew carried long terms, such as federal-government charges that had a maximum of five years each, with a possible total of twenty or thirty years for draft evasion, all of which Thompson, the Eau Claire police officer, knew about. Defendant testified that he and the police officer talked about reducing the sentence and there was talk·about second-degree murder, and that defendant insisted upon the charge being reduced to third-degree murder. . He denied that he made an oral confession prior to the time he discussed reducing the charge, and testified that the only confession he made was the one in writing after the district attorney and the police officer came to his cell and informed him they would reduce the charge to third-degree murder. Defendant claims that while he was talking with Thompson, the officer agreed to cause no trouble for Alice Hanson, and that Thompson agreed to help him when he came up for parole, and not to include in the information previous sentences unreversed of record, set forth in the information as follows: Sentence by the county court of Monroe county, Wisconsin, on the 11th day of August, 1938, of not less than one year nor more than eighteen months for keeping a house of ill fame; sentence by the circuit court for Clark county, Wisconsin, on the 31st day of October, 1931, of not less than four years nor more than twenty years for robbery; sentence by the circuit court for Chippewa county, Wisconsin, on the 22d day of April, 1927, of not less than one year nor more than four years for armed robbery; sentence by the district court for the northern district of New York on the 29th day of October, 1925, of one year and one day and a fine of $5,000 and costs for transporting a stolen automobile in interstate commerce. Defendant said he realized pleading these sentences would increase the sentence in the event he entered a plea of guilty to third-degree murder and testified to the length of time it would be necessary for him to serve before he would be eligible for parole in either second-degree

or third-degree murder. Defendant had been associated with Peter Bachmeyer in other crimes and had served time at Waupun at the same time with Bachmeyer and had known him for a number of years.

The court admitted the confession in evidence, stating that the jury had the right to hear the testimony and take the voluntariness of the confession into consideration in arriving at their verdict. The jury was recalled and Thompson placed upon the witness stand, where he testified to the same facts he had before the court on the question of admission of the confession. The defendant, as a witness in his own behalf, testified that he was experienced in writing articles, having written for some magazines, and was experienced in writing applications for pardons for persons who were in jail, and explained to the jury why he had made the various statements that were made in the written confession.

In the written confession defendant stated that Bachmeyer had been urging him for some time to help him rob someone and get some money, and that on March 20, 1938, he was at the Ralph Green home at Eau Claire and was informed by Green and Bachmeyer that Robeson had considerable money on him, as Green had observed him cashing a check at a nearby grocery store, and that he had a large roll of bills. The confession stated that Green was to receive one third of the proceeds for providing the information; that Bachmeyer had a blackjack, which consisted of a bar of soap in a sock, and that they left the house about 8 o'clock, got into defendant's car and drove around and parked on the opposite side of the street from where Robeson lived; that defendant had a date with Alice Hanson at 8:45 o'clock, and when Robeson failed to come defendant became restless and was ready to leave; that Bachmeyer left the car and went to a tavern to see whether Robeson was there, and shortly after he returned to the car Robeson came along, drove his car into his

driveway, where it was agreed that Bachmeyer was to hold him up, while he was in his garage; that Bachmeyer hesitated and that he, LaPean, left the car, went across the street and met Robeson as he came out of the garage, and when he attempted to hold him up Robeson attacked him and defendant shot him, running back to the car and driving away; that thereafter he went to the home of Alice Hanson, where he picked her up, with another girl, and went to a tavern on the outskirts of the city, spending the evening there with her, and returning to his mother's home about 11 o'clock that evening.

If the confession in question was not freely and voluntarily made, and was induced by threats and promises, it is not admissible. *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471; *Esterra v. State* (1928), 196 Wis. 104, 219 N. W. 349; *Flamme v. State* (1920), 171 Wis. 501, 177 N. W. 596; *Bianchi v. State* (1919), 169 Wis. 75, 171 N. W. 639.

"Whether a confession is voluntary or, in other words, testimonially worthy depends largely upon the facts of the particular case. In determining this question, factors which are proper to be considered include the sex, age, character, disposition, education, and previous training of accused, his mental qualities, his physical health, and his surroundings, as well as the nature, content and import of the confession itself." 22 C. J. S., Crim. Law, p. 1428, sec. 817, and cases there cited.

Defendant was forty years of age, and from his testimony and experience with crime it is evident that he was familiar with criminal law and procedure. He was well-educated, as he testified to having written articles for magazines, and applications for pardons in many instances. He was in good health and was not submitted to what is known in the criminal law as "third-degree practices."

"The principle upon which a confession is treated as sometimes inadmissible is that under certain conditions it becomes untrustworthy as testimony. . . .

"The principle, then, upon which a confession may be excluded is that it is, under certain conditions, testimonially untrustworthy. What circumstances may make it so, and what degree of untrustworthiness is sufficient, are further questions, but the essential feature is that the principle of exclusion is a testimonial one, analogous to the other principles which exclude narrations as untrustworthy. This theory, while developing different and inconsistent practical tests at the hands of various courts, seems to have been generally accepted as the underlying and fundamental principle since the first introduction of any doctrine about the inadmissibility of confessions." 3 Wigmore, Evidence (3d ed.), p. 246, sec. 822.

The only question is whether this confession was obtained by promises which induced him to make an untrue or untrustworthy confession. "The question of the admissibility of the alleged confession is in the first instance for the court; if there be doubt with respect to the fact that it was voluntary, then that question should be submitted to the jury with proper instructions." *Pollack v. State, supra,* p. 217. The determination of the court is controlling unless it appears satisfactorily from the record that such determination was clearly against the evidence. *Connors v. State* (1897), 95 Wis. 77, 69 N. W. 981; *Roszczyniala v. State* (1905), 125 Wis. 414, 104 N. W. 113.

The court followed the procedure which is the law of this state, by excluding the jury and receiving testimony to determine admissibility of the confession. If the testimony of Thompson is to be believed, the defendant admitted killing Robeson prior to any talk about reducing the crime with which he was charged. With this true, the oral confession was clearly admissible. He made the oral confession with full knowledge that the woman with whom he had been living had made a statement to the officers that he admitted to

her shortly after the murder that he shot Robeson. In his oral confession he places the blame for the crime on Bachmeyer, thus trying to gain the sympathy of the officer. He then makes the request that the charge be reduced to murder in the third degree realizing, as he must have done, that his testimony would be helpful in convicting the other persons implicated by his confession. This is evidenced by the fact that he offered to reduce the confession to writing, wherein he states that he stands ready to testify and swear to the facts set forth, in any court in the United States, at any time. So far as his part in the crime is concerned, the written confession adds nothing to the oral confession. True, it is somewhat more in detail and implicates Ralph Green, who was not implicated in the oral confession, but it still admits he shot the deceased. The fact that he was attempting to get the charge reduced and succeeded in getting the officer and the district attorney to attempt to do so, does not of itself make the confession false and untrustworthy. All of the facts surrounding it are to be taken into consideration.

The defendant started to reduce the confession to writing on the same day that he made the oral confession, while he was alone in his cell, and delivered it to the officer the following day. The officer testified that he did not discuss the details of the crime with the defendant at any time, as both the oral and written confessions were voluntary. The details of defendant's part in the crime are the same as he described them in the oral confession, and as were testified to by a witness to the crime. He had also admitted commission of the crime to his close friend. The court properly admitted the confession in evidence, the weight to be given to it being a question for the jury under proper instructions.

The jury was fully instructed on the law to be applied to confessions in considering the case. It is considered the determination of the trial court that the written confession was voluntary and trustworthy, and therefore admissible, was not clearly against the evidence.

It is further contended that the verdict should be vacated and set aside because it is contrary to the credible evidence that the defendant was elsewhere at the time of the commission of this crime. Alice Hanson testified that defendant came to her home in the city of Eau Claire in his automobile at 9 o'clock in the evening on the night the crime was committed, and that shortly thereafter they drove to a tavern on the outskirts of the city. It was stipulated that two other witnesses would testify that the defendant was at this tavern at about 9 o'clock on the night Ray Robeson was shot, and that the same could be considered by the jury as though the witnesses had so testified. The testimony is that the crime was committed about 8:45 p. m., and the residence of Alice Hanson was a very short distance from the place where the crime was committed. The defendant had ample time to drive from the place where the crime was committed to the Hanson home and reach there at the time testified to.

The remarks made by special counsel in his argument to the jury, complained of by the defendant, have been fully examined, and we find nothing improper or prejudicial. There is ample evidence to sustain the judgment.

*By the Court.*—Judgment affirmed.