In re the Termination of Parental Rights to Alexander V., a Person Under the Age of 18:

Steven V., Petitioner-Respondent,

v.

Kelley H., Respondent-Appellant.†

Court of Appeals

*No. 02–2860. Submitted on briefs February 17, 2003.—Decided March 13, 2003.*

2003 WI App 110

(Also reported in 663 N.W.2d 817.)

† Petition to review granted 6-12-03.

241

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Philip J. Brehm*, Janesville.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Duane M. Jorgenson*, Darlington.

A brief was filed by the guardian ad litem, *Douglas J. Heenan* of *Block, Scott & Heenan, LLC,* Platteville.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. VERGERONT, P.J. Kelley H. appeals the order terminating her parental rights to Alexander V. under WIS. STAT. § 48.415(4) (2001–02).[1] She contends she is entitled to a reversal of that order and a remand for a jury trial because of two trial court errors: (1) the trial court used summary judgment procedure, thereby denying her a fact-finding hearing, a jury trial, and due process; and (2) the court failed to advise her at the initial hearing of her right under WIS. STAT. § 48.422(5) to a continuance to discuss requesting substitution of the judge with her counsel.

¶ 2. We conclude that under *Walworth County Department of Human Services v. Elizabeth W.,* 189 Wis. 2d 432, 436, 525 N.W.2d 384 (Ct. App. 1994), the court erred in employing summary judgment procedure, but that a harmless error analysis is appropriate. We conclude this error was harmless because there were no

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

disputed issues of fact regarding the elements of WIS. STAT. § 48.415(4). We also conclude that under *M.W. and I.W. v. Monroe County*, 116 Wis. 2d 432, 342 N.W.2d 410 (1984), the trial court erred in not advising Kelley at the initial hearing of her right to request a continuance to discuss with counsel substitution of the judge. However, on the facts of this case, which include the undisputed facts that Kelley knew of her right to request a substitution and had discussed it with counsel before the initial hearing, a harmless error analysis is appropriate, and we conclude the error was harmless. Accordingly, we affirm.

## BACKGROUND

¶ 3. Steven V., the father of Alexander, filed a petition to terminate Kelley's parental rights to Alexander, born March 28, 1983. The petition, filed on August 8, 2001, in Grant County, alleged WIS. STAT. § 48.415(4) as the ground for termination. This ground is established with proof that (a) the parent had been denied physical placement or visitation by an order containing the prescribed statutory notice; and (b) at least one year has passed without the order being modified to permit periods of physical placement or visitation. Section 48.415(4)(a) and (b).

¶ 4. Kelley appeared with counsel at the initial hearing on September 4, 2001. She advised the court that she was contesting the petition and wanted a jury trial.[2]

---

[2] Any party necessary to the proceeding or whose rights may be affected by an order terminating parental rights shall be granted a jury trial upon request if the request is made before the end of the initial hearing. WIS. STAT. § 48.422(4). By stipulation of the parties, the time limit of forty-five days from the

¶ 5. Shortly thereafter, the guardian ad litem for Alexander filed a motion for summary judgment under Wis. Stat. § 802.08 or, in the alternative, for a directed verdict. The guardian ad litem contended there was no disputed issue of fact regarding the grounds for termination under Wis. Stat. § 48.415(4). In an affidavit he averred that he had been appointed guardian ad litem for Alexander by the court in Grant County; his appointment was continued by the court in Brown County for a trial there concerning the custody and placement of Alexander; after that trial the court entered an order on June 21, 1999, that contained the required statutory notice and denied Kelley physical placement; and to his knowledge no court order had subsequently modified the order so as to permit periods of physical placement or visitation with Alexander. A copy of the June 21, 1999 order was attached to the affidavit. Kelley objected to summary judgment procedure on the ground that under *Elizabeth W.*, 189 Wis. 2d at 436, it may not be used in a case for termination of parental rights. She also objected to the motion for a directed verdict on the ground that it was premature, since, she asserted, she was entitled first to the opportunity to present evidence and to refute the evidence presented by petitioner.

¶ 6. At the hearing on the motion, Kelley appeared by telephone and her counsel was present in the courtroom. The court stated that the ground for termination under Wis. Stat. § 48.415(4) involved only matters of law for the court to decide and a jury was therefore not needed; it did not make sense to empanel a jury to hear undisputed evidence and then direct a verdict; and summary judgment procedure was a more

initial hearing for holding a fact-finding hearing under § 48.422(2) was extended, the court having found good cause because of the need for input from Dr. Beverly Bliss.

appropriate procedure. The court concluded that it would schedule a fact-finding hearing for November 2, 2001, which would be a jury trial only if Kelley made a showing to the court by a certain date that there were disputed issues of fact that required a trial.

¶ 7. Kelley did not advise the court prior to November 2 that there were disputed issues of fact requiring a jury trial. On November 2 she appeared with counsel. Her counsel acknowledged that, given the ground for termination alleged, the court "does have the authority to direct a verdict in regard to that—or summary judgment, I guess, type motion" based on the record before it. Her counsel indicated, as he had at the earlier hearing on the motion, that his concern was with the reasons why Kelley had not complied with the order. The court confirmed that in its view the reasons Kelley had not complied were relevant, but not at this stage.

¶ 8. The court then took judicial notice of the file in this case, which, the court stated, established that Kelley had been denied periods of physical placement by a court order with the proper notice, and that at least a year had elapsed since that order with no modifications. The court entered a written order stating that the "verdict is directed in favor of the moving party, Steven . . ." pursuant to the grounds in WIS. STAT. § 48.415(4)(a) and (b).

¶ 9. The dispositional hearing took place on April 11 and 12, 2002. The court determined that it was in Alexander's best interests to terminate Kelley's parental rights.

¶ 10. With new counsel, Kelley moved for both a jury trial and a new dispositional hearing. She contended that she had been denied her right to a fact-finding hearing, a jury trial, and due process, and there

was insufficient evidence at the fact-finding stage to establish a ground for termination. She also contended that at the time of the plea hearing on September 4, 2002, she had not been fully informed of her right under WIS. STAT. § 48.422(5) to request a continuance to consult with counsel regarding whether she wished to request substitution of the judge, and she was not aware she had the right to a continuance until after her parental rights were terminated.[3]

¶ 11. The court concluded that Kelley was not entitled to a new trial on the ground that she had been denied her right to a fact-finding hearing, a jury trial, and due process. The court stated that, although the better practice would have been to empanel a jury to hear the petitioner's proof and then direct a verdict, there was no evidence or argument that failure to do so had prejudiced Kelley, or that the outcome would have been different had that occurred. Since Kelley did not have a constitutional right to a jury trial, the court reasoned, the rules for waiver of a jury trial in a criminal context did not apply. The court reaffirmed its earlier ruling that the reasons Kelley did not comply with the conditions contained in the order denying her physical placement and visitation were not relevant in determining whether grounds existed under WIS. STAT. § 48.415(4), and it concluded the elements of § 48.415(4) had been established. The court also concluded that Kelley's constitutional right to due process before her parental rights were terminated had not

---

[3] The motion also asserted that if any of the issues were waived by the action of trial counsel, trial counsel was ineffective. However, Kelley did not have her trial counsel testify at the hearing on the motion, and the court therefore denied any portion of the motion based on ineffective assistance of counsel. She has not pursued this issue on appeal.

been violated because she had had a fair opportunity to be heard, to present all her evidence, and to have her evidence, including the reasons she had not complied with the conditions in the order, considered before the petition to terminate was granted.

¶ 12. The court also denied Kelly's request for a jury trial and a new dispositional hearing on the ground she did not know she could have requested a continuance of the initial hearing to request a substitution of the judge. The court concluded it was not obligated under WIS. STAT. § 48.422(5) to advise a party represented by counsel of the right to seek a continuance to decide on a request for substitution. Based on Kelley's testimony that she spoke with her attorney on August 30, 2001, and discussed with him the issue of substitution of the judge, the court found that Kelley's attorney had advised her of the right to substitute. It found not credible her testimony that she would have exercised that right had she been given more time to think about it after September 4, and found that she decided at that time she did not want to exercise that right. The court based this determination on evidence that, knowing she had the right to substitute the judge, Kelly did not attempt to talk about it further with her attorney or her attorney's partner, who appeared with her at September 4 hearing, did not follow up on a letter she wrote to her attorney about it, and did not say anything to the court about substitution.

## DISCUSSION

*Use of Summary Judgment Procedure*

¶ 13. Kelley contends that, in spite of the terms of the written order, the trial court did not direct a verdict

against her but employed summary judgment procedure. We agree. The court did not empanel a jury, hear witnesses, and direct a verdict on the evidence presented, but instead decided that the ground for termination was met based on the written submissions and the court records of which it took judicial notice— essentially a summary judgment procedure. *See* WIS. STAT. § 802.08. This was error, Kelley asserts, because *Elizabeth W.*, 189 Wis. 2d 432, precludes the use of summary judgment procedure to establish that there are grounds for termination in a TPR proceeding. According to Kelley, the court's improper use of summary judgment deprived her of the right under WIS. STAT. § 48.422(2) to contest the ground for termination at a fact-finding hearing, her right under § 48.422(4) to a jury trial, and her constitutional right to due process.[4] This presents a question of law, which we review de novo. *Elizabeth W.*, 189 Wis. 2d at 435–36.

¶ 14. In *Elizabeth W.*, the alleged grounds for termination were abandonment, WIS. STAT. § 48.415(1), and continuing need of protection and services, § 48.415(2). The parent contested the petition. The trial court granted the petitioner's motion for summary judgment after concluding that the parent's attorney's affidavit and attached letters did not meet the requirements for summary judgment submissions. *Id.* at 435. We reversed, stating:

> We agree with Elizabeth that summary judgment is inappropriate in TPR cases where a parent contests the termination. Parents have a fundamental liberty interest in matters of family life. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This interest is protected by the Due Process Clause of the Fourteenth Amendment to

---

[4] Kelley has presented her arguments under four separate headings, but we consider them together.

the United States Constitution. *Id.* "[S]tate intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause." *Id.* (quoted source omitted).

Due process entitled Elizabeth to a factfinding hearing before her parental rights were terminated. Section 48.422(2), STATS., provides: "If the petition [for the termination of parental rights] is contested the court shall set a date for a fact-finding hearing . . . ." This hearing is of critical importance because it assures that the termination of a parent's right to the care, custody and management of his or her child is justified . . . .

. . . Similarly [as in *Shirley J.C. v. Walworth County*, 172 Wis. 2d 371, 373, 493 N.W.2d 382, 383 (Ct. App. 1992),[5] an involuntary commitment case], in an involuntary termination of parental rights case, due process requires that the parent, whose fundamental rights are in jeopardy of being terminated, is granted a factfinding hearing. According to § 48.422(2), STATS., a parent *need only* contest the TPR petition to be entitled to a factfinding hearing. If we were to allow summary judgment, the hearing requirement in § 48.422(2) would be meaningless. *See Shirley J.C.*, 172 Wis. 2d at 378, 493 N.W.2d at 385.

---

[5] In *Shirley J.C. v. Walworth County*, 172 Wis. 2d 371, 373, 493 N.W.2d 382 (Ct. App. 1992), we held that, while a statutory right to a jury trial does not, by itself, preclude the use of summary judgment, an involuntary commitment proceeding under WIS. STAT. § 51.20 is never without a material issue of fact if the individual refuses voluntary treatment, and for that reason summary judgment is inappropriate. In addition, we held use of summary judgment violates due process "even when the only evidence presented by the subject of the commitment is a denial of the need for treatment." *Id.* at 379.

250

> Additionally, summary judgment is inappropriate in a TPR case where a parent contests the termination. Similarly to this court's reasoning in *Shirley J.C.*, a TPR proceeding can never be without material issues of fact if a parent refuses to voluntarily terminate his or her right to a child. *See id.* at 377, 493 N.W.2d at 385. By contesting the termination, a parent automatically raises the issue of whether he or she is a fit parent. This creates a genuine issue of material fact which cannot be disposed of by summary judgment.

*Elizabeth W.*, 189 Wis. 2d at 436–38 (footnote omitted) (footnote added).

¶ 15. We agree with the petitioner and the guardian ad litem that *Elizabeth W.* is factually distinguishable from this case in a significant respect. One of the alleged grounds in that case was abandonment, which is not established if the parent proves that he or she had good cause for failing to visit with or failing to communicate with the child during the specified time periods. Wis. Stat. § 48.415(1)(c). Thus, when a parent contests abandonment, good cause for lack of contact is an issue, and that typically requires the resolution of factual issues and cannot be decided as a matter of law. Similarly, the ground of continuing need of protection and services consists of elements that are heavily fact-dependent: for example, the reasonableness of the agent's efforts in providing services, § 48.415(2)(a)2, the parent's failure to meet the conditions, and the substantial likelihood that the parent will not meet these conditions within the prescribed time period. Section 48.415(2)(a)3.[6] In contrast, in this case the ground for

---

[6] We also observe that in *Shirley J.C.*, 172 Wis. 2d at 373, on which we relied in *Elizabeth W.*, we viewed the denial of the need for treatment as creating a material factual issue. *Id.* at 377.

abandonment depends upon proof of a court order denying periods of physical placement and the lapse of one year without a modification of that order, § 48.415(4), and it is difficult to envision factual disputes on these two elements. In any event, Kelley does not contend there is a factual dispute in this case.

¶ 16. The absence of disputed issues of fact may warrant a different analysis of the statutory rights to a fact-finding hearing and a jury trial and of due process requirements than that in *Elizabeth W.* However, we conclude that such an analysis would require a modification of *Elizabeth W.* We did not confine our analysis or conclusion there to situations in which there were disputed issues of fact, but instead held in broad language that "summary judgment is inappropriate in involuntary termination of parental rights cases for constitutional reasons" when a parent contests termination. *Id.* at 439. Since we do not have the authority to modify our decisions, *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997), we conclude we are bound by *Elizabeth W.*

¶ 17. We do not agree with the petitioner that subsequent cases have affected our obligation to follow *Elizabeth W.* In *Door County DHFS v. Scott S.*, 230 Wis. 2d. 460, 467, 602 N.W.2d 167 (Ct. App. 1999), we followed *D.B. v. Waukesha County Human Services*, 153 Wis. 2d 761, 765, 451 N.W.2d 799 (Ct. App. 1989), and held that a directed verdict was permissible in TPR proceedings. In rejecting the argument that *Elizabeth W.* dictated otherwise, we stated:

> [*Elizabeth W.*] held that summary judgment is inappropriate in TPR proceedings . . . . In that case, however, summary judgment occurred before a fact-finding hearing was held.

In this case, the verdict was directed as to only one undisputed element of the TPR statute, after a full jury trial in which Scott had ample opportunity to secure discovery and introduce evidence to refute the department's contentions that Kristeena had been in CHIPS custody. When no contrary evidence was produced, the circuit court was justified in directing a verdict as to the first element.

*Id.* at 467. *Scott S.* does not undermine, but instead reinforces, the prohibition of summary judgment procedure in TPR proceedings.

¶ 18. The petitioner also cites *Sheboygan County D.H.H.S. v. Julie A.B.*, 2002 WI 95, 255 Wis. 2d 170, 648 N.W.2d 402, as providing clarification of statutory modifications, such that now summary judgment is allowed if there are no disputed issues of fact on the ground for termination. In *Julie A.B.*, the supreme court did clarify that a TPR proceeding is a two-step procedure rather than a three-step procedure as two prior cases[7] had indicated: the first step is a fact-finding hearing to determine whether grounds exist, and the second step is the dispositional hearing. 2002 WI 95 at ¶¶ 24–28. The court explained that at the close of the fact-finding hearing, " If grounds for the termination of parental rights are found by the court or jury, the court *shall* find the parent unfit." *Id.* at ¶ 26 (quoting Wis. Stat. §48.424(4)). There is no intermediate step at which the court decides whether the unfitness was egregious enough to warrant considering termination as a disposition. *Id.* at ¶ 36.

---

[7] The two prior cases were *B.L.J. v. Polk County Department of Social Services*, 163 Wis. 2d 90, 470 N.W.2d 914 (1991), and *State v. Kelly S.*, 2001 WI App 193, 247 Wis. 2d 144, 634 N.W.2d 120. The court withdrew language in the former and overruled the latter. *Julie A.B.*, 2002 WI 95 at ¶ 41.

¶ 19. Since the language in WIS. STAT. § 48.424(4) that the court in *Julie A.B.* relied on had been added in 1988—well before *Elizabeth W.* was decided—we do not see how that statutory modification affects the continuing validity of *Elizabeth W.* It may be that the court's analysis in *Julie A.B.* of exactly what is at issue at the fact-finding stage supports a modification of some of the language and analysis in *Elizabeth W.*, but we cannot conclude that *Julie A.B.* overrules *Elizabeth W.* or a case on which it relies.[8]

---

[8] In contrast, in *State v. Fredric H.*, 2001 WI App. 141, 246 Wis. 2d 215, 630 N.W.2d 734, we expressly relied on language in *B.L.J. v. Polk County Department of Social Services*, 163 Wis. 2d 90, 470 N.W.2d 914 (1991), which the court in *Julie A.B.* withdrew. We discuss *Fredric H.* at some length here because it involved a petition alleging WIS. STAT. § 48.415(4) as the ground for termination.

In *Fredric H.*, the trial court precluded evidence of mitigating circumstances surrounding the parents' inability to re-establish visitation at both the fact-finding hearing and the disposition. We concluded that the trial court erred because this evidence was relevant to the parents' alleged unfitness, and therefore the right to meaningfully participate in the termination proceedings included the right to present this evidence at the fact-finding hearing. 2001 WI App 141 at ¶¶ 12–13. We relied on *B.L.J.* for the proposition that, even if the fact-finder has found a ground for termination, the court is to evaluate the evidence to determine the degree of unfitness. *Id.* at ¶ 14. This is precisely the aspect of *B.L.J.* that the court in *Julie A.B.* criticized and the language it withdrew. *Julie A.B.*, 2002 WI 95 at ¶ 37–46.

*Julie A.B.* does not necessarily require the conclusion that the trial court in *Fredric H.* did not err, because the trial court there did not allow the mitigating evidence at the disposition hearing, either. However, in view of *Julie A.B.*, we conclude we may not follow *Fredric H.* insofar as it holds that evidence of a parent's effort to comply with the conditions for re-establishing

¶ 20. Our conclusion that *Elizabeth W.* prohibits summary judgment in a TPR proceeding even if there is no factual dispute on the ground for termination is consistent with the comment to Wis JI—CHILDREN 335, which the trial court referred to. This comment addresses Wis. Stat. § 48.415(4) and provides: "The Committee is aware of the holding of the court . . . in [*Elizabeth W.*] proscribing the issue of summary judgment in a termination proceeding." Therefore, although the committee recognizes that the two elements of § 48.415(4) are questions of law to be decided by the court and so recommends no jury instruction, it also states:

> In view of the holdings in [*Elizabeth*] *W.* and [*Scott S.*], if a parent contests a petition alleging this ground, a trial court may be best advised to convene a fact-finding hearing, receive evidence establishing the prior order and the lack of a modification to that order for at least one year, and direct a verdict in favor of the petitioner.

Cmt. Wis JI—CHILDREN 335.

¶ 21. We understand the trial court's reasoning in this case—that it is a waste of time and resources to convene a jury to hear evidence on the elements of Wis. Stat. § 48.415(4) that will not be disputed and to then

visitation is relevant at a fact-finding hearing where the only ground alleged is Wis. Stat. § 48.415(4). *Ambrose v. Cont'l Ins. Co.*, 208 Wis. 2d 346, 354, 560 N.W.2d 309 (Ct. App. 1997) (if a court of appeals decision is inconsistent with a supreme court decision, we must follow the latter). The trial court in this case was therefore correct that this evidence was not relevant in the first stage, and it allowed Kelly to present at the dispositional hearing evidence of her efforts to meet the conditions, which ones she believed she had met, and why she had not been able to meet others.

direct a verdict based on that evidence. However, we conclude that is what *Elizabeth W.* requires when a parent contests that ground and requests a jury trial under Wis. Stat. § 48.422(4). The arguments that this result is not required by statute or by the constitution must be directed to the supreme court.

¶ 22. Accordingly, we conclude that the court erred in using summary judgment procedure. We must now determine whether this error requires us to reverse the order terminating Kelley's parental rights.

■

¶ 23. Kelley did not in the trial court and does not on appeal identify any evidence that she would have introduced at a jury trial to controvert the guardian ad litem's affidavit and the evidence of which the court took judicial notice.[9] However, she asserts that she is nonetheless entitled to a remand for a jury trial because we may not under any circumstances use a harmless

---

[9] In her first brief, Kelley contends that the court could not take judicial notice of the order entered in Brown County, citing *State v. LaPean*, 247 Wis. 302, 19 N.W.2d 289 (1945), for the proposition that a court may not take judicial notice of its own record in another case. However, as the guardian ad litem points out, the court in *State v. Miller*, 35 Wis. 2d 454, 478 n.3, 151 N.W.2d 157 (1967), stated that its decision in *Venisek v. Draski*, 35 Wis. 2d 38, 45, 150 N.W.2d 347 (1945), held that a court *could* take judicial notice of its own records on request and overruled *LaPean* to the extent it was inconsistent with *Venisek*. Kelley does not pursue this issue in the reply brief. We take this as a concession that the trial court in this case acted properly in taking judicial notice of the order denying Kelley physical placement, and do not consider the issue further. *See Schlieper v. DNA*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (proposition asserted by respondent and not disputed by appellant in reply is taken as admitted).

error analysis when the error has deprived her of a trial to a jury which she has requested. We do not agree.

¶ 24. Two recent supreme court cases have used a harmless error analysis in TPR proceedings. In *Waukesha County v. Steven H.*, 2000 WI 28, ¶¶ 56–59, 233 Wis. 2d 344, 607 N.W.2d 607, the court concluded that the trial court erred in not taking testimony on the allegations of the petition when the parent did not contest them but did not admit them. However, the court did not reverse because it concluded the parent was not prejudiced because evidence at other hearings provided a factual basis for the allegations in the petition. The following year the supreme court used a harmless error analysis in *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768. There the court concluded that the trial court erred in entering a default judgment on the issue of abandonment without first taking evidence sufficient to support a finding of abandonment by clear and convincing evidence. *Id.* at ¶ 26. However, it took up as a separate issue whether the error required reversal and concluded it did not, because the evidence at the disposition hearing established the ground for termination. *Id.* at ¶¶ 27–35. In reaching this conclusion, the court applied WIS. STAT. § 805.18(2) which provides:

> (2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

257

The *Evelyn C.R.* court also applied case law precedent defining "affect[ing] the substantial rights" of a party as "a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue," which is "a possibility sufficient to undermine confidence in the outcome." *Id.* at ¶ 28. Applying this standard, the court concluded the error was harmless because at the dispositional hearing the court took evidence sufficient to support the finding of abandonment. *Id.* at ¶ 3.

¶ 25. Kelley points out that the supreme court in *Steven H.* expressed "grave concerns about the trial court's failure to follow the [statutory] procedure." 2000 WI 28 at ¶ 60. Nonetheless, it did not reverse for that reason because of its conclusion that the parent had not been prejudiced.

¶ 26. Kelley also relies on our discussion of prejudice in *Shirley J.C.*, 172 Wis. 2d 371. There we rejected the county's argument that Shirley had not shown prejudice as a result of the summary judgment proceeding in the commitment proceeding, stating: "Shirley was deprived of her constitutional liberty interests by virtue of the trial court's order. A deprivation of fundamental liberty is sufficient to show prejudice . . . ." *Id.* at 380–81.

¶ 27. *Shirley J.C.* did not involve a TPR proceeding and was decided before *Steven H.* and *Evelyn C.R.* To the extent *Shirley J.C.* may be inconsistent with the supreme court's application of a harmless error analysis in those two cases, we conclude we must follow them, not *Shirley J.C.* The court in *Evelyn C.R.* concluded that the trial court erred in not taking evidence before making a finding on a ground for termination precisely because "the constitutional and statutory code require a showing of proof" before doing so. 2001 WI 18 at ¶ 25. Nevertheless, the court applied a harmless error analy-

sis. *Evelyn C.R.* therefore precludes Kelley's argument that, solely because the court did not follow constitutionally required procedures, a harmless error analysis is improper. We cannot agree that the trial court's error in procedure in this case was of such a different nature than that in *Evelyn C.R.* that we should not apply a harmless error analysis.

¶ 28. Applying the harmless error analysis as articulated *Evelyn C.R.,* we conclude the procedure used by the trial court to establish a ground for termination under WIS. STAT. § 48.415(4) was harmless error because there is no reasonable possibility that, had the court empanelled a jury to hear the evidence on the two elements, there would have been a different outcome.

*Continuance to Consult on Substitution of Judge*

¶ 29. Kelley contends that under *Burnett County Department of Social Services v. Kimberly M.W.,* 181 Wis. 2d 887, 512 N.W.2d 227 (Ct. App. 1994), the trial court had an obligation to advise her at the initial hearing on September 4, 2001, that she had the right under WIS. STAT. § 48.422(5) to a continuance to consult with her attorney on requesting substitution of the judge. Since the court did not do that, she continues, under the *Bangert*[10] analysis adopted in *Kimberly M.W.,* she is entitled to a reversal of the order terminating her parental rights. The guardian ad litem responds that § 48.422(1) does not require the trial court to inform Kelley of the right under § 48.422(5) to a continuance to consult with her attorney on requesting substitution of the judge. Alternatively, the guardian ad litem and petitioner contend the record supports the trial court's determination that Kelley was not prejudiced by its

---

[10] *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

failure to inform her of the right to a continuance to consult with her attorney on substitution. Resolution of these issues presents questions of law, since they involve construction of a statute, determination of the legal standard to be applied for reversible error, and application of that standard to a given set of facts. *See Minuteman Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989); *Carney v. Mantuano*, 204 Wis. 2d 527, 532, 554 N.W.2d 854 (Ct. App. 1996); *Nottleson v. DILHR*, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980).

¶ 30. Wisconsin Stat. § 48.422 provides in part:

> **Hearing on the petition.** (1) . . . . At the hearing on the petition to terminate parental rights the court shall determine whether any party wishes to contest the petition and inform the parties of their rights under sub. (4) and s. 48.423 [relating to persons alleging their paternity].
>
> . . . .
>
> (4) Any party who is necessary to the proceeding or whose rights may be affected by an order terminating parental rights shall be granted a jury trial upon request if the request is made before the end of the initial hearing on the petition.
>
> (5) Any nonpetitioning party, including the child, shall be granted a continuance of the hearing for the purpose of consulting with an attorney on the request for a jury trial or concerning a request for the substitution of a judge.

█

¶ 31. We agree with the guardian ad litem and the trial court that Wis. Stat. § 48.422(1) does not expressly require the trial court to advise a non-petitioning party of the rights they have under subsec. (5), while it does expressly require the court to do so regarding the rights

in subsec. (4). However, in *M.W. and I.W. v. Monroe County*, 116 Wis. 2d 432, 342 N.W.2d 410 (1984), the supreme court does state that the trial court has the duty to inform a party of their right to a continuance and their right to a substitution of judge. In the context of addressing the trial court's obligation to ensure that a parent is represented by counsel unless there is a knowing waiver of that right, *see* WIS. STAT. § 48.23(2), the court stated:

> A party may be his or her own counsel, but, in any event, whether represented or not, a party must be told of the right to trial by jury and the right to a substitution of judge. Whether a party exercises those rights personally, if there is a waiver of counsel or through counsel is irrelevant; but the statutes clearly afford a party to a termination proceeding the option to exercise those rights.

*M.W. and I.W.*, 116 Wis. 2d at 440.

¶ 32. Later, the court was more specific about the trial court's duties.

> The statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver; and, in any case, the trial court has the duty to make a full explication of the statutory rights—the right to representation, the right to a continuance, the right to request a jury trial, and the right to request a substitution of judge.

*Id.* at 441.

¶ 33. We quoted the above language in *Kimberly M.W.*, in which the parent argued that the trial court had failed to advise her of her right under WIS. STAT. § 48.422(5) to request a substitution of the judge as required by *M.W. and I.W.*, and she was therefore entitled to a reversal. *Kimberly M.W.*, 181 Wis. 2d at 890–91. We did not specifically address the language of

§ 48.422(1); rather, we assumed that the trial court did have a duty under *M.W. and I.W.* to inform the parent of the right to substitution of the judge and we focused on whether prejudice was required. We concluded it was. *Id.* at 891–92.

¶ 34. It is arguable that we did not in *Kimberly M.W.* squarely decide what the trial court's obligations were regarding WIS. STAT. § 48.422(5) and that we did not need to because we concluded the parent did not make the initial showing required under *Bangert*. It is also arguable, as the trial court in this case decided, that the supreme court's discussion of § 48.422(5) in *M.W. and I.W.* was dictum because it was not germane to the rationale for its decision regarding the right to be represented by counsel and the need for a knowing waiver of that right. *See State v. Koput*, 142 Wis. 2d 370, 386, 418 N.W.2d 804 (1988). Generally dictum is not binding authority, and the supreme court has advised that it is appropriate for the court of appeals or a circuit court to evaluate statements in the supreme court's opinions on the basis of whether they constitute dictum. *Id.* at 386 n.12. However, we are also mindful that in "[the supreme court's] superintending and administrative capacity, some pronouncements that are technically obiter dictum are nevertheless administrative or supervisory directions that are intended for the guidance of the court system and are to be followed." *Id.*

¶ 35. We conclude the better course is to treat the supreme court's pronouncements in *M.W. and I.W.*, quoted above, as directions to the trial courts given in the supreme court's supervisory capacity and therefore as binding authority. Under this view, we were obligated to follow them in *Kimberly M.W.* and we are obligated to do so in this case. We therefore conclude the trial court

did have a duty to advise Kelley at the initial hearing of her right to request a continuance to consult with her attorney on substitution of the judge. At the same time, we invite the supreme court to clarify whether our reading of *M.W. and I.W.* is correct.

¶ 36. We next consider whether the trial court's omission, which is not disputed, entitles Kelley to a reversal. The parties' dispute on this issue arises because of their differing views of the correct standard for determining if the trial court's error was reversible error. Kelley contends that we must apply a *Bangert* analysis, as we did in *Kimberly M.W.*, and as the supreme court did in *State v. Kywanda F.*, 200 Wis. 2d 26, 546 N.W.2d 440 (1996). The petitioner and guardian litem are implicitly arguing that a harmless error analysis applies. Although there is language in *Kywanda F.* indicating that the supreme court viewed these two tests as the same, this case illustrates, in our view, why they are not.

¶ 37. In *Kimberly M.W.*, we concluded the analysis used by the court in *Bangert*, 131 Wis. 2d 246, was appropriate to determine whether the trial court's error was reversible error., 181 Wis. 2d at 892. Under that analysis, the defendant must make a prima facie showing that the trial court violated a mandatory duty imposed by statute or case law and allege he or she in fact did not know or understand the information; if that is done, the burden shifts to the state to show that the defendant knowingly and voluntarily waived his or her rights. *Id.* citing *Bangert*, 131 Wis. 2d at 274. Applying that analysis in *Kimberly M.W.*, we concluded the parent was not entitled to a reversal because she had not alleged that she did not in fact know of or understand her right to request a substitution of judge. *Id.* at 892–93.

¶ 38. Subsequently in *Kywanda F.*, 200 Wis. 2d 26, the supreme court considered the proper remedy for a trial court's failure to inform a juvenile that the request for a substitution of judge had to be made before the end of the plea hearing or was waived, as required by Wis. Stat. § 48.30(2). The court said:

> The State argues that a circuit court's noncompliance with the requirements of [the statute] should be considered harmless error unless the party establishes actual prejudice resulting from the error. We agree. In the case of the right to substitution, we conclude that actual prejudice is shown if it is established that the juvenile was not told of the right and did not know of that right. [citing *Kimberly M.W.* and *M.W. and I.W.*] Therefore, the prejudice suffered by the juvenile in such an instance is the loss of the opportunity to substitution due to the lack of knowledge of that right.

*Id.* at 37. The court in *Kywanda F.* then discussed our use of the *Bangert* analysis in *Kimberly M.W.* and concluded that a *Bangert* analysis "provides the appropriate framework to determine whether a circuit court commits reversible error upon failing to inform a juvenile of his or her statutory right to substitution." *Kywanda F.*, 200 Wis. 2d at 38. The court concluded that the juvenile in that case had made a prima facie showing and remanded for an evidentiary hearing on whether the juvenile actually knew of her right to substitution. *Id.* at 40–41.

¶ 39. According to Kelley, she made a prima facie case under the *Bangert* analysis because it is undisputed the court did not tell her at the initial hearing that she had a right to a continuance to consult with her attorney on requesting substitution of the judge, and she testified that she did not know she had that right. The burden then shifts to the petitioner, she continues,

to prove by clear and convincing evidence that she did know she had the right to a continuance for that purpose, and he did not meet that burden.

¶ 40. The petitioner and the guardian ad litem, on the other hand, argue that the trial court applied the correct standard by considering whether Kelley was prejudiced by not knowing she could request a continuance to further consider whether to substitute a judge. The court concluded she was not prejudiced, because it found that she knew she could request a substitution and decided she did not want to, and that, rather than lack of knowledge about her right to a continuance, was the reason she did not request substitution. In essence, the trial court applied the harmless error analysis of WIS. STAT. § 805.18(2), asking whether there was a reasonable possibility that Kelley would have requested a substitution had she known she could have requested a continuance to further discuss the topic with her attorney.

█

¶ 41. The question we must decide is whether *Kimberly M.W.* and *Kywanda F.* require that we use a *Bangert* analysis rather than a harmless error analysis in this case. We conclude they do not. This court in *Kimberly M.W.* and the supreme court in *Kywanda F.* found the *Bangert* analysis appropriate in the cases before it. However, we read both cases as ultimately concerned with whether the court's failure to inform of statutory rights prejudiced the parties. *Kimberly M.W.*, 181 Wis. 2d at 892 ("This language [from *M.W. and I.W.*] supports our conclusion that *M.W. and I.W.* holds that a court's failure to advise the parents of their rights as required by sec. 48.422, Stats. is not reversible error absent prejudice to the parties."); *Kywanda F.*, 200 Wis. 2d at 37 (agreeing with the State that the trial court's

noncompliance with the statute is harmless error absent actual prejudice resulting from the error). We do not read either case as requiring a *Bangert* analysis to determine whether there is actual prejudice regardless of whether that analysis does so in a particular case.

¶ 42. In this case, unlike in *Kimberly M.W.* and *Kywanda F.*, it is undisputed that Kelley knew she had the right to substitution and had discussed it with her counsel; the issue of prejudice turns on her lack of knowledge of the right to a continuance to consider it further. The significance of the right to a continuance is that it facilitates the right to request a substitution. We conclude a harmless error analysis is appropriate in this context and that Kelley is entitled to a reversal only if the lack of knowledge that she could request a continuance to further discuss substitution with her counsel affected her decision not to request a substitution. The trial court's finding that Kelley had decided not to request a substitution, after being informed of her right and discussing it with counsel, is supported by the record and we therefore accept it. *See* WIS. STAT. § 805.17(2). In addition to the evidence the court specifically mentioned, her explanation for why she would have requested a substitution if she had known about a continuance supports the court's determination. Kelley testified that in January 18, 2002, long after any continuance would have ended, she learned something that caused her to want a substitution. The reasonable inference from this testimony, which the court implicitly drew, is that before January 18, 2002, she did not want a substitution. Based on the trial court's findings and credibility determinations, we conclude there is not a reasonable possibility that the court's failure to advise Kelley of her right to a continuance affected her decision not to request substitution.

*By the Court.*—Order affirmed.

¶ 43. LUNDSTEN, J. (*concurring*). Although I agree with part of the majority opinion and the result, I disagree with the majority's analysis under the heading "Continuance to Consult on Substitution of Judge" and, therefore, write separately.

¶ 44. The majority finds that Judge VanDeHey erred when he failed to "advise Kelley at the initial hearing of her right to request a continuance to consult with her attorney on substitution of the judge." Majority at ¶ 35. While it is patently a good idea for trial judges to advise parents in termination cases of their various rights, I cannot fault Judge VanDeHey for failing to provide the above advisement in this case. Indeed, the judge's comments suggest he would have provided the information if Kelley had not been represented by counsel. Regardless, the question here is whether the judge was *required* to provide the advisement.

¶ 45. As the majority acknowledges, Judge VanDeHey correctly observed that WIS. STAT. § 48.422 (2001–02)[1] does not on its face require a judge to advise a parent of his or her right to seek a continuance for the purpose of deciding whether to request substitution of the judge. Majority at ¶ 31. Both the majority and Judge VanDeHey considered language in *M.W. and I.W. v. Monroe County Department of Human Services*, 116 Wis. 2d 432, 342 N.W.2d 410 (1984), saying that § 48.422 does require this advisement. The majority concludes that the *M.W. and I.W.* statement is a supervisory directive by the supreme court. Judge VanDeHey

[1] All references to the Wisconsin Statutes are to the 2001–02 version, unless otherwise noted.

concluded, in essence, that the *M.W. and I.W.* statement is in error and is dictum. I agree with Judge VanDeHey.

¶ 46. In *M.W. and I.W.*, the supreme court addressed whether a trial judge erroneously failed to assure that parents in a termination of parental rights action were either represented or had waived representation. *M.W. and I.W.*, 116 Wis. 2d at 433, 436–40. The court determined that the trial judge erred by erroneously assuming the parents were represented when, at best, there was merely an indication that the parents had contacted an attorney to request representation. *Id.* at 441.

¶ 47. In the course of deciding the matter at hand, the *M.W. and I.W.* court spoke on a topic that was not disputed or necessary to its decision, that is, whether the statutes required a judge, at an initial hearing, to inform a represented parent of certain rights. The *M.W. and I.W.* court stated:

> A party may be his or her own counsel, but, in any event, whether represented or not, a party must be told of the right to trial by jury and the right to a substitution of judge. Whether a party exercises those rights personally, if there is a waiver of counsel or through counsel is irrelevant; but the statutes clearly afford a party to a termination proceeding the option to exercise those rights.

*Id.* at 440. Later, the court spoke a little more specifically:

> The statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver; and, in any case, the trial court has the duty to make a full explication of the statutory rights—the right to representation, the right to a continuance, the right to request a jury trial, and the right to request a substitution of judge.

268

*Id.* at 441.[2]

¶ 48. However, this "statutory direction" is far from "unequivocal." The statute referred to by the supreme court in *M.W. and I.W.* contains no such directive. WISCONSIN STAT. § 48.422 reads, in pertinent part:

> **Hearing on the petition. (1)** The hearing on the petition to terminate parental rights shall be held within 30 days after the petition is filed. *At the hearing on the petition to terminate parental rights the court shall* determine whether any party wishes to contest the petition and *inform the parties of their rights under sub. (4) and s. 48.423.*

> . . . .

[2] I note that this statement in *M.W. and I.W.* does not precisely track the error found by the majority. The majority reads *M.W. and I.W.* as holding that a trial judge must "advise [a parent] at the initial hearing of [his or her] right to request a continuance to consult with [his or her] attorney on substitution of the judge." Majority at ¶ 35. The language of *M.W. and I.W.* only states that "the trial court has the duty to make a full explication of the statutory rights— . . . the right to a continuance, . . . and the right to request a substitution of judge." *M.W. and I.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 441, 342 N.W.2d 410 (1984). Also, in the context of discussing an unrepresented parent, the *M.W. and I.W.* court stated:

> [I]t is implicitly the duty of the judge not only to advise of the right to have counsel, but to state that the statutes give the right to a continuance for the purpose of consulting an attorney. As a matter of law, a waiver of counsel could not be knowledgeable under the parental-termination statutes unless the party is told by the judge the specific nature of a party's inquiries which may be directed to counsel, *i.e.,* trial by jury and substitution of judge.

*Id.* at 439–40. Because this language plainly applies to unrepresented parents, it need not be addressed here.

(4) Any party who is necessary to the proceeding or whose rights may be affected by an order terminating parental rights shall be granted a jury trial upon request if the request is made before the end of the initial hearing on the petition.

(5) Any nonpetitioning party, including the child, shall be granted a continuance of the hearing for the purpose of consulting with an attorney on the request for a jury trial or concerning a request for the substitution of a judge.

(Emphasis added.) Thus, § 48.422(1) directs trial judges to advise parties of the right to a jury trial because that right is specified under subsection 4. But neither the right to a continuance nor the right to substitution is mentioned in subsection 4. Subsection 5 does specify that a continuance shall be granted for the purpose of consulting with an attorney about substitution, but that subsection does not direct judges to advise parties of any right.

¶ 49. The majority declines to find the *M.W. and I.W.* language dicta. In *State v. Koput*, 142 Wis. 2d 370, 418 N.W.2d 804 (1988), Chief Justice Heffernan, the author of *M.W. and I.W.*, explained:

The court of appeals declined the invitation of defense counsel to disregard [a statement in our prior opinion] as dicta, apparently believing that it was required to give equal weight to every statement in our opinions. While such deference is gratifying, we would not consider it inappropriate for the court of appeals or a circuit court to evaluate statements in our opinions on the basis of whether they constitute dictum. We point out, however, that, in our superintending and administrative capacity, some pronouncements that are technically obiter dictum are nevertheless administrative or supervisory directions that are intended for the guidance of the court system and are to be followed.

*Koput*, 142 Wis. 2d at 386 n.12.

¶ 50. While there is some lack of consistency,[3] Chief Justice Heffernan's statement in *Koput* seems to be the generally accepted view of the supreme court. *See State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) ("Dicta is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it."); *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 917, 437 N.W.2d 213 (1989) ("Today we explicitly recognize that the language of the *La Crosse* opinion was broader than necessary to determine the issue before the court and was therefore dicta."); *American Family Mut. Ins. Co. v. Shannon*, 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984) ("a statement not addressed to the question before the court or necessary for its decision" is dictum); *Reiter v. Dyken*, 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980) ("[T]he court's statements regarding that issue were reduced to mere dicta."); *Miller v. Mauston Sch. Dist.*, 222 Wis. 2d 540, 554, 588 N.W.2d 305 (Ct. App. 1998) (the supreme court "has made clear it . . . does not 'consider it inappropriate for the court of appeals or a circuit court to evaluate statements in [its] opinions on the basis of whether

---

[3] *See Chase v. American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922) ("[W]hen a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision."); *see also State v. Hansen*, 2001 WI 53, ¶ 59 n.4, 243 Wis. 2d 328, 627 N.W.2d 195 (Wilcox, J., dissenting); *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981); *Beloit Corp. v. DILHR*, 63 Wis. 2d 23, 31, 216 N.W.2d 233 (1974).

they constitute dictum.' " (quoting *Koput*, 142 Wis. 2d at 386 n.12)); *State ex rel. Schultz v. Bruendl*, 168 Wis. 2d 101, 112, 483 N.W.2d 238 (Ct. App. 1992) ("Language broader than necessary to determine the issue before the court is dicta.").

¶ 51. I conclude that the above-quoted statements from *M.W. and I.W.* are non-binding dictum. The pronouncements are not relevant to the disputed issues in that case, and there is no indication that the *M.W. and I.W.* court intended to issue a directive based on administrative or supervisory authority. To the contrary, the *M.W. and I.W.* court seems simply to be asserting that it is stating the obvious meaning of the statutes. My non-exhaustive review of case law indicates that when the supreme court issues a directive utilizing its administrative or supervisory authority, it normally provides some indication that it is doing so.[4]

¶ 52. Our own decision in *Burnett County Department of Social Services v. Kimberly M.W.*, 181 Wis. 2d 887, 512 N.W.2d 227 (Ct. App. 1994), does not change my opinion. In *Kimberly M.W.*, we assumed that the language from *M.W. and I.W.* that we focus on here was

---

[4] In all of the following cases, the supreme court expressly relied on its superintending or administrative authority. *See, e.g., State ex rel. Hass v. Wisconsin Court of Appeals*, 2001 WI 128, ¶ 10, 248 Wis. 2d 634, 636 N.W.2d 707; *Arneson v. Jezwinski*, 206 Wis. 2d 217, 219–20, 556 N.W.2d 721 (1996); *State v. Resio*, 148 Wis. 2d 687, 696–97, 436 N.W.2d 603 (1989); *State v. Koput*, 142 Wis. 2d 370, 399, 418 N.W.2d 804 (1988); *D.S. v. Racine County*, 142 Wis. 2d 129, 136–37, 416 N.W.2d 292 (1987); *State v. Bangert*, 131 Wis. 2d 246, 267–71, 389 N.W.2d 12 (1986); *Eberhardy v. Circuit Court*, 102 Wis. 2d 539, 578, 307 N.W.2d 881 (1981); *State v. Coble*, 100 Wis. 2d 179, 206–07, 301 N.W.2d 221 (1981); *State v. Jenich*, 94 Wis. 2d 74, 82–83, 288 N.W.2d 114, *modified per curiam,* 94 Wis. 2d 97a, 292 N.W.2d 348 (1980).

not dicta. *See Kimberly M.W.*, 181 Wis. 2d at 892–93. But that assumption was unnecessary to our decision in *Kimberly M.W.* because we concluded that, regardless of the circuit court's obligation to provide information, the parent was not entitled to relief because she had not made the required allegation that she did not understand the information. *Id.* at 893. In my view, any suggestion in *Kimberly M.W.* that *M.W. and I.W.* is binding precedent on this point is also dicta.

¶ 53. Accordingly, because the language Kelley relies on from *M.W. and I.W.* is non-binding dictum, and because the rule expressed in that language is not supported by the statutes, I would affirm Judge VanDe-Hey on the ground that he was not required to advise Kelley at the initial hearing of her right to request a continuance for the purpose of consulting with her attorney about substitution. Further, while I agree with the majority's harmless error analysis, under my view such analysis is unnecessary.

¶ 54. Having said all this, I hasten to add it would appear desirable that the supreme court impose the sort of advisement requirements which the court in *M.W. and I.W.* assumed was required by the statutes. The termination of a person's parental rights is a drastic measure, and courts should take great care to be sure parents understand their rights.

¶ 55. Therefore, I respectfully concur in the result, but I do not join paragraphs 31 to 42 of the majority opinion.